438 So.2d 546 (1983)
Grady L. MESSER
v.
Leonard O. LONDON.
No. 83-C-1782.
Supreme Court of Louisiana.
August 30, 1983.
Rehearing Denied September 23, 1983.
Albert F. Richard, Plaquemine, for applicant.
J. Arthur Smith, III, John Samaha, Baton Rouge, for respondents.
WATSON, Justice.
Plaintiff, Grady L. Messer, filed this suit to disqualify defendant, Leonard O. "Skeet" London, as a candidate for reelection to the police jury of East Feliciana Parish, alleging that London had not been domiciled in district two during the year preceding his qualification on July 25, 1983. The trial court declared London an ineligible candidate and the court of appeal affirmed. *547 Messer v. London, 436 So.2d 756 (La.App. 1 Cir.1983). A writ was granted to consider the judgment. 437 So.2d 286 (La., 1983).

ISSUE
Does Leonard O. London have the domiciliary qualification necessary for a police juror representing district two of East Feliciana Parish?

LAW
Article 3, Section 4, Louisiana Constitution of 1974, requires that a candidate for the legislature must have been "actually domiciled for the preceding year" in the district from which he or she seeks election. LSA-R.S. 33:1225 provides that police jurors shall possess the same qualifications as members of the House of Representatives.
The general definition of domicile is contained in LSA-C.C. art. 38:
"The domicile of each citizen is in the parish wherein he has his principal establishment.
"The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected."
LSA-C.C. art. 41 deals with change of domicile:
"A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there."
LSA-C.C. arts. 42 and 43 govern "proof of intent" to change domicile and state:
Article 42: "This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove.
"This declaration is made in writing, is signed by the party making it, and registered by the recorder."
Article 43: "In case this declaration is not made, the proof of this intention shall depend upon circumstances."
LSA-C.C. art. 44 deals with public officials holding office for a limited term:
"A citizen accepting a temporary and precarious office, or one from which he may be removed at pleasure, retains his ancient domicile, if he has not evinced a contrary intention."
Residence and domicile are not synonymous terms. A person can have several residences but only one domicile. Taylor v. State Farm Mutual Auto. Ins. Co., 248 La. 246, 178 So.2d 238 (1965). Domicile is a person's principal domestic establishment,[1] as contrasted to a business establishment. A man and wife are presumed to have the same domicile. Robinson v. Standard Oil Company of Louisiana, 194 La. 904, 195 So. 351 (1940).
A change in domicile occurs when there is a change in actual residence accompanied by an intention to make a new principal establishment or home. Succession of Rhea, 227 La. 214, 78 So.2d 838 (1955). There is a presumption against change of domicile. In Re Adoption of Rials, 220 La. 484, 56 So.2d 844 (1952).
The phrase "actually domiciled" in the Constitution of 1974 requires that one holding legislative office have a real rather than fictitious domicile in the area represented. However, the question of "intention", the crux of the preceding codal articles, remains viable. See 5 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 328.
When a person holds public office, the law presumes that his domicile continues in the place where he exercises his public functions. Oakey v. Eastin, 4 La. 69 (1832). Any doubt should be resolved in *548 favor of allowing a candidate to run for public office. Slocum v. DeWitt, 374 So.2d 755 (La.App. 3 Cir.1979). The burden of proof is on the party contesting candidacy.

FACTS
Leonard O. London was born and raised in East Feliciana Parish. He owns a home in the Richardson Subdivision at McManus which is located in his police jury district. The mailing address is Route 1, Box 616, Jackson, Louisiana, 70748. London and his wife were married on June 26, 1966, and separated in June of 1978. London filed a petition for separation in 1979 and a petition for divorce in 1980. No action was ever taken in either suit. The Londons have remained married and have never been legally separated or divorced.
London has operated a barbershop, London's Hair Designers, at 1060 Swan Street, Baton Rouge, Louisiana, 70807, for eighteen to twenty years. This Baton Rouge property is not "the family home". London and his wife Johnnie executed a "construction mortgage" in connection with the Swan Street property on April 5, 1978. The notarized instrument[2] states that the Londons are residents of Route 1, Box 616, Jackson, East Feliciana Parish, Louisiana. London has a "commercial account" for his business with Gulf States Utilities Company.[3] Another utility account for 1040 Swan Street was opened September 26, 1980, and disconnected on November 2, 1982. According to London, this second building was used to store barbershop equipment and supplies. London has used his business address at 1060 Swan Street for various purposes and lists that address on the police jury's stationary.
Several neighbors testified that they had not seen London or his vehicles at his East Feliciana residence since the 1978 separation. Thomas S. Williams,[4] who lives about two miles from the London residence, claimed that he had checked the house for London's vehicles four or five times a week for a year, driving by first thing each morning. This witness had been unable to get London on the telephone at the East Feliciana residence. According to London, he was present for some of the calls but refused to talk to Williams. Lilly Brown Holmes said that the three London children told her their daddy had not come back home.
On August 25, 1982, Johnnie London signed forms to obtain free school lunches for the couple's two oldest children. She listed herself as the only adult member of the household. According to her deposition testimony,[5] her husband was not present when she signed the forms for the children's school lunches. She said the two could have been having a "spat" (Depo. 24), and her only concern was securing the children a free hot meal at school. During their separation, her husband sometimes stayed at his nephew's home in Baton Rouge, and according to her testimony, London has stayed at the McManus house with her since 1980 and averages two to four nights a week there. When he is absent she calls his nephew or calls the barbershop. She does not know of any residence he has ever maintained in Baton Rouge.
London first ran for office in 1972. Jerry Bunch, president of the police jury, testified that London has served on the jury approximately ten years and is vice-president of that body. Bunch meets with London about twice a week and the police jury meets twice a month. When the two travel together, Bunch picks up London at McManus Park. Bunch generally calls London in Baton Rouge. Alvin T. Havard, a member of the police jury, asked London for a home phone number in order to reach him over a weekend and was given the barbershop *549 number, where an answering service took the call.
Claudis Barton, a next door neighbor of the Londons in the Richardson subdivision, testified that he had visited London at his McManus home during 1982, as well as in the preceding fourteen or fifteen years. Henry Spann testified that he had seen London three or four times a week for seventeen or eighteen years, frequently at the McManus residence.
Leola Johnson has known London for fifteen or sixteen years. London is a board member of "Black Action", a political organization to which Ms. Johnson also belongs. According to her testimony, London resides at the McManus residence and she has seen him there frequently.
Woodrow Wilson testified that he had known London all of the latter's life. When London finished high school, Wilson was his principal. Wilson interceded to get London a scholarship to a barbering school and they have had a close relationship since that time. Wilson is master of a Masonic Lodge in Clinton to which London belongs. London occasionally attends the lodge meetings. Both Wilson and London belong to the Voter's League of East Feliciana Parish and London occasionally attends those meetings. Wilson sees London about four times a month, talks to him on the telephone twice a week and has him for Sunday dinner at least twice a month. He had been to London's house in the Richardson subdivision about three times in the preceding year. Two of those visits were casual and unscheduled. According to Wilson, London votes in East Feliciana and attends church there.
David Robertson, a member of Black Action, testified that London has been a board member for eleven years and is parish president of the organization. Robertson had visited London at his McManus residence during the preceding year and a half.
London testified that he lives in the Richardson subdivision with his wife and three children and has owned the property since his marriage. He votes at Ward 3, Precinct 2-B, close by his home and has never lived or voted in any other parish. He has served on the police jury for eleven years. London belongs to the St. Paul Baptist Church in Wilson, East Feliciana Parish. He is listed in the telephone directory at Route 1, Box 616, Jackson, Louisiana, and has been for approximately sixteen years. Since November 22, 1967, London has maintained a Gulf States Utilities account with the mailing address of Route 1, Box 616, Jackson, Louisiana, 70748. London has periodically stayed with his nephew in Baton Rouge when he and his wife were having difficulties.
The trial court found London evasive and questioned his credibility. London explained that he resented the lawsuit, which he believed to be political harassment. After testimony was concluded, the trial judge visited the premises at Route 1, Box 616, Jackson, Louisiana, and found no personal effects belonging to Mr. London except a couple of coats. Also missing from the house was a gold velvet bed which London had testified was located there. Except for the statement that London visited the McManus house occasionally, the trial court declined to accept London's testimony. Significantly, the trial court found:
"The court accepts that Mr. London visits the district frequently to discharge his duties as police juror and occasionally stays overnight at the family home." (Tr. 13) (Emphasis added).

CONCLUSION
The resolutory question is whether plaintiff proved that London intended to change his domicile.[6] Although there is considerable evidence that London does not maintain a residence in East Feliciana Parish, there is also contrary evidence. But *550 most important, there is almost no evidence that London intended to change his domicile.
After the trial court visited the McManus residence, he concluded that the physical evidence did not prove London lived there. However, London did not have the burden of proof. Plaintiff, contesting London's candidacy, had a heavy burden. He was required to prove: that London did not have a residence with his wife and children; that London's only residence was in East Baton Rouge Parish; and that London had evidenced the intention of changing his domicile.
Mr. and Mrs. London have remained married. Filing of the lawsuits which have not gone to judgment did not change their status. Absent strong proof to the contrary, it must be assumed that Leonard London is domiciled with his wife and children at the residence he maintains in East Feliciana Parish. This is where his family is established. Despite his frequent absences from home and his business in Baton Rouge, the evidence does not prove that he has any other domestic residence.
A public official who discharges his duties is presumed to continue the domicile he had when elected. Oakey v. Eastin, supra. That London's domicile was in East Feliciana Parish when he was last elected is uncontested. He has actively served as a police juror. Additionally, he has continued his voter's registration in East Feliciana Parish; kept his church affiliation there; and maintained his membership in parish political groups. Although the evidence suggests that London may have another residence, there is not a preponderance of evidence that London has ever had the intent to change his domicile from East Feliciana to East Baton Rouge. LSA-C.C. art. 41.
The trial judge's conclusion that London visits and sometimes spends the night at the McManus house brings the case (assuming a second residence in East Baton Rouge) within the contemplation of LSA-C.C. art. 38, under the terms of which one has the "option" of choosing his domicile. London emphatically denied any intention of moving from his lifelong home in East Feliciana Parish. LSA-C.C. art. 41. London's service in public office and candidacy for reelection strongly negate any intention on his part to change his domicile. LSA-C.C. art. 44. Plaintiff did not carry his burden of proving that London is disqualified by change of domicile from running for reelection.
The trial court was clearly wrong in holding London disqualified as a candidate for reelection.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and judgment is rendered dismissing plaintiff's suit at his costs.
REVERSED AND RENDERED.
LEMMON, J., concurs.
NOTES
[1] Zinko v. Zinko, 204 La. 478, 15 So.2d 859 (1943); Hyman v. Schlenker, 44 La.Ann. 108, 10 So. 623 (1892).
[2] Exhibit P-25.
[3] Exhibit P-13.
[4] Williams had had a lawsuit against London which was dropped after London apologized and paid the court costs.
[5] The deposition of Ms. London was proffered by plaintiff.
[6] The law of Louisiana comports with that of other jurisdictions which is that:

"[T]here must be a concurrence of the fact and the intent to change one's domicile, and in the absence of either element, no change can be accomplished." 129 A.L.R. 1383.