668 So.2d 1304 (1996)
Clementine BRADLEY, Plaintiff-Appellee,
v.
Charles THEUS, Defendant-Appellant.
No. 28,714-CA.
Court of Appeal of Louisiana, Second Circuit.
February 20, 1996.
Writ Denied February 26, 1996.
*1306 J. Lomax Jordan, Jr., Lafayette, for Appellant.
Christian C. Creed, Monroe, for Appellee.
Before SEXTON, HIGHTOWER and STEWART, JJ.
PER CURIAM.
In this action objecting to candidacy, defendant Charles Theus appeals a district court decision that he did not meet the qualifications of residence and domicile as required by law and was disqualified as a candidate in the primary election for the office of mayor for the municipality of Monroe. The trial judge's reasons for judgment are well stated and adequately address the factual and legal issues presented below. We thus edit and adopt them as the major part of our own opinion.

The Trial Court's Reasons for Judgment
Plaintiff, Clementine Bradley, brought this action contesting the candidacy of defendant, Charles Theus, for mayor of the City of Monroe. It was not disputed that the plaintiff had standing to bring this action and the evidence supported the conclusion that she is domiciled in the City of Monroe and a qualified elector for the upcoming mayoral election. Plaintiff also filed this action timely in accordance with La. R.S. 18:1405.
The law of Louisiana and the Charter of the City of Monroe are clear that in order for someone to be a candidate for mayor he must be an elector who was domiciled and actually resided in the municipality for at least the year immediately preceding the time he qualifies for the election. Mr. Theus qualified for the upcoming election for mayor on January 31, 1996 listing his address on the notice of candidacy form as 1001 South First Street, Monroe, Louisiana.
In his sworn testimony, Mr. Theus testified that he moved to the 1001 South First Street address sometime in November 1995. He further testified that approximately from February 1995 until September 1995, he resided on Filhiol Street in Monroe, Louisiana with a Jeff Pardue. Mr. Theus could not remember the address of the residence on Filhiol Street. Prior to February 1995, Mr. Theus testified that he lived on Racine Street in Monroe, Louisiana from approximately November 1994, until January or February 1995. During all of this time, Mr. Theus rented an apartment located at 3980 Old Sterlington Road, which was admittedly outside the city limits of Monroe. Mr. Theus's driver's license lists as his address 3980 Old Sterlington Road and, from May 15, 1995, until January 11, 1996, Mr. Theus listed that same address as his residence on the records of the Registrar of Voters for Ouachita Parish. Mr. Theus had been ordered by this court at the time plaintiff filed this action, to bring certain records, such as tax returns, checking account records, bank statements, etc., to the trial of this matter which, under the law, had to be fixed within four days of the filing of the action. However, Mr. Theus was never personally served, the only service being through the Clerk of Court as allowed by statute in such matters, and Mr. Theus did not bring any of the documentation requested except his driver's license.
Many witnesses were called by both plaintiff and defendant. Plaintiff produced several witnesses who clearly and emphatically denied that Mr. Theus ever resided on Racine Street. These witnesses were all neighbors, or potential neighbors, of Mr. Theus's house on Racine Street. All of these witnesses were forthright and convincing in their testimony and they persuaded this Court that Mr. Theus never personally resided in the house he purchased on Racine Street in November 1994, before he rented it to a tenant sometime in January 1995. However, the pertinent *1307 time for examination here is from January 31, 1995, until the date of Mr. Theus's qualification as a candidate for mayor, which was January 31, 1996.
Mr. Theus testified that he next lived at an unknown address on Filhiol Street with Jeff Pardue, from approximately February 1995, until September 1995. Mr. David Robinson, a newspaper reporter called to testify by plaintiff, testified that in an earlier interview with Mr. Theus, Mr. Theus had stated that he only lived at the Filhiol Street address for a short period of time, approximately two weeks, while he, Mr. Theus, was getting a house renovated. According to Mr. Robinson, Mr. Theus stated that he had lived principally on Racine Street and South First Street. The obvious witness to corroborate Mr. Theus's residence on Filhiol Street would be Mr. Jeff Pardue, but this Court found Mr. Pardue's testimony to be ambivalent and evasive. Mr. Pardue testified that Mr. Theus paid him either $100.00 or $150.00 per month (Mr. Theus had stated $100.00 per month) and that Mr. Theus would occasionally provide a meal. Mr. Pardue stated that he was surprised when Mr. Theus asked to move in with him and that Mr. Theus stated that it was because he wanted to be a candidate for mayor of Monroe. Mr. Pardue also testified that on at least two weekends per month, he would visit with Mr. Theus at Mr. Theus's apartment on Old Sterlington Road, where they would grill their meals and watch television because Mr. Theus had a satellite dish at that apartment. Mr. Pardue estimated that Mr. Theus was at the Filhiol residence anywhere from three to five times a week, but on close questioning, admitted that he, Mr. Pardue, was often not there and that much of the time, he did not actually see Mr. Theus, but assumed he was there because of leftover food, a car parked at the premises, etc.
Mr. Keith McRee, another witness called by Mr. Theus, also gave unclear testimony and could not substantiate for the Court any definite time period when Mr. Theus was allegedly residing with Mr. Jeff Pardue or at the residence on South First Street.
On the other hand, Mrs. Darrelynn Richard, an independent witness called by plaintiff, testified that she, too, lived in the apartment complex at 3980 Old Sterlington Road and that her apartment was across from Apartment 602 in which she thought Mr. Theus lived in 1994 and 1995. She testified that she observed several vehicles belonging to Mr. Theus, particularly a gray Mercedes that she saw Mr. Theus driving on several occasions. She noted that Mr. Theus's car(s) would be parked near his apartment, both early in the mornings and late in the evenings. Mrs. Richard also knew Mr. Theus's sister, Ms. Shirley Dixon, and that Ms. Dixon also had an apartment in the same apartment complex. Mrs. Richard testified that she took notice of Mr. Theus and his cars, which were usually of a more expensive type than the cars she was used to seeing at the apartment complex.
Ms. Shirley Dixon, the sister of Mr. Theus, testified that she now lives at the 1001 South First Street address and that her brother, Mr. Theus, also now lives there. However, her testimony also showed that this home is actually owned by the mother of Mr. Theus and Ms. Dixon, although the mother still resides in Delhi, Louisiana. Mr. Theus showed Ms. Dixon a deed to said property which listed his address thereon as 3980 Old Sterlington Road, although it stated that was his address "for tax purposes." Ms. Dixon testified that the house was purchased sometime in September or October, 1995, but, when questioned in detail, her testimony was, at best, confusing to the Court.
In such an action as this, the plaintiff has the burden of proof by a preponderance of the evidence. See Autin v. Terrebonne, 612 So.2d 107 (La.App. 1st Cir.1992); Charbonnet v. Hayes, 318 So.2d 917 (La.App. 4th Cir.1975), writ denied. This Court is also aware that in such matters, the election laws should be liberally *1308 construed and any benefit of the doubt should be resolved in favor of permitting the candidate to run for public office. See Slocum v. DeWitt, 374 So.2d 755 (La.App. 3d Cir.1979), writ denied.
All of the testimony in this case, particularly the independent witnesses who have no particular interest in the outcome of the matter, convince this Court that Mr. Theus's actual domicile is his apartment located at 3980 Old Sterlington Road, which is outside the limits of the municipality of Monroe. The documentation shown this Court, i.e., Mr. Theus's driver's license, his voter registration until just before qualifying date, and his admitted mailing address, corroborate this fact. While it may be argued that he intended his domicile to be somewhere in the municipality, he is also required under the law to have his actual residence in the municipality the immediate year preceding his qualification as a candidate. His testimony that he resided at the Racine Street address is belied by several independent neighboring witnesses. His testimony, that he "resided" with Mr. Jeff Pardue on Filhiol Street, is contradicted, or at least severely limited, by the testimony of an independent witness who observed him more often than not living at his apartment outside the city limits. Mr. Theus's testimony and the testimony of some of his own witnesses, supports the conclusion, more probably than not, that his real home is his apartment on Old Sterlington Road, where he receives his mail. When the two are compared, it certainly seems that Mr. Theus's residence at his apartment on Old Sterlington Road was much more of a permanent residence than any transitory arrangement with Mr. Pardue somewhere on Filhiol Street. The purchase of the residence at 1001 South First Street seems to have been more for the benefit of Mr. Theus's sister, than Mr. Theus and certainly, even if that is now considered his residence, it was not his residence for the year preceding the date of his qualification as a candidate.
The court does not relish substituting its will for the will of the electorate and would prefer allowing Mr. Theus's candidacy to be evaluated by the voters of Monroe. However, viewing the evidence as a whole, this court is convinced that the plaintiff has borne her burden of proof. It is the judgment of this court, therefore, that plaintiff's objection to the candidacy of Mr. Theus is hereby sustained and that the defendant does not meet the qualification of residence and domicile as required by law and is hereby disqualified as a candidate in the primary election for the office of mayor of the municipality of Monroe.

Additional Observations
Beyond our agreement with the trial court's reasons for judgment, we are mindful that the manifest error-clearly wrong standard demands great deference to the trier of fact's findings when, as here, such findings are based on determinations regarding the credibility of witnesses. Only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Gardner v. McDonald, 27,303 (La.App.2d Cir. 08/23/95), 660 So.2d 107.
In order to be qualified as a candidate for the office of mayor, Mr. Theus had to be an elector of the municipality of Monroe who, at the time of qualification, had been domiciled and actually residing for at least the immediately preceding year in the municipality of Monroe. La.R.S. 33:384. Perhaps more than any other single fact, Mr. Theus's change of voter registration in May of 1995 to an address outside the city of Monroe, strikes a mortal blow to his legal arguments, despite a change back to Monroe in January 1996. The legal requirement of domicile and actual residence is at least as strong as the constitutional requirement that a member of the legislature be "actually domiciled" for the preceding year in the legislative district from which he seeks election. See La. Const. Art. 3, § 4.
With regard to this latter requirement, we concurred in Davis v. English, *1309 28,251 (La.App.2d Cir. 09/22/95), 660 So.2d 576, with the view that the word "actually" serves to emphasize the residence aspect of domicile, and that the apparent intent of the delegates to the Constitutional Convention was to limit candidacy for political office to citizens who actually live in the district they aspire to represent. We agreed that the constitutional article was designed to eliminate a system under which candidates would establish a "political domicile" from which to seek office even though they chose to live and maintain their families in another area and were not truly representative of the district in which they sought election. We draw the same conclusion here, especially considering that the qualifications for mayor were amended in 1993 when the words "shall have been domiciled" were changed to "shall have been domiciled and actually resided."
In order to be eligible to vote for mayor of Monroe, one must be a bona fide resident of that municipality. La.R.S. 18:101(A). In this respect, the word "resident" means a citizen who resides in the municipality in which he offers to register and vote, with an intention to reside there indefinitely; a citizen of this state shall not be or remain registered or vote in more than one place of residence at any one time. La.R.S. 18:101(B).
While one may select a domicile or residence for political purposes, we express grave doubt as to whether one may establish such a legitimate situs for purposes of voting in an election, but simultaneously establish a different legitimate situs for purposes of running as a mayoral candidate in an election.
As a general proposition, voter registration is only one factor to be considered for purposes of determining a person's domicile. However, when an individual's declared residence for purposes of voting is at odds with his declared residence for purposes of seeking office, the inconsistency is very strong, if not irrefutable evidence against proper qualifications for candidacy.

Exceptions
On the day scheduled for oral arguments before this court, Mr. Theus filed for the first time a number of exceptions. The first alleges insufficiency of citation, the second alleges insufficiency of service of process, and the third alleges nonconformity of the petition with the requirements of La. C.C.P. Art. 891. Without detailing the substance of these exceptions, we hold that all three have been impliedly waived by Mr. Theus's general appearance. La.C.C.P. Art. 7; cf. La.C.C.P. Art. 2002(2). Our jurisprudence has long held that any act of a defendant, except to object to jurisdiction over his person, which recognizes the case as in court, constitutes a general appearance. Stanley v. Jones, 197 La. 627, 2 So.2d 45 (1941). While the provisions of La.C.C.P. Art. 7 have given further definition to this concept, the essence remains the same. Mr. Theus represented himself at trial in this matter, cross-examined witnesses, called his own witnesses, and presented evidence in his own behalf. Such actions, being inconsistent with those limited exceptions in Art. 7, plainly recognized the case as in court and waived the above-referenced objections. See McGee v. Leonard B. Hebert, Jr. & Co., 506 So.2d 603 (La.App. 4th Cir.1987).
Two remaining objections consist of a peremptory exception of nonjoinder and a peremptory exception of prescription. The former is based on the argument that the clerk of court, W.J. "Bill" Hodge, was not named as a defendant, while the latter is based on the argument that an essential part of bringing an action objecting to candidacy is posting a copy of the petition in a conspicuous place at the entrance of the clerk of court's office, and that failure to so post is imputable to the plaintiff. The former argument lacks merit because, while both the candidate and the clerk of court are by statute proper parties against whom actions objecting to candidacy may be instituted, La. R.S. 18:1402, the statute does not thereby make the clerk either a necessary or an indispensable party. The latter argument lacks merit because the posting of the petition is a ministerial duty of the clerk, and even if we should assume that this duty was not performed herein, the timeliness of the *1310 plaintiff's action would not be called into question any more than the clerk's failure to formally file a lawsuit within an applicable prescriptive period would affect the timeliness of a petition that has been delivered to the clerk timely. See Lambert v. Kelley, 270 So.2d 532 (La.1972).

Constitutionality of La.R.S. 18:1401, et seq.
For the first time, Mr. Theus is also attacking the constitutionality of the statutory procedures for challenging candidacy, alleging that they do not adequately safeguard the constitutional requirements of Due Process. Because the statutes were not questioned as to constitutionality in the trial court, that issue will not be considered on appeal. See Rogers v. Synthes, Ltd., 626 So.2d 775 (La.App.2d Cir.1993); Injury Hotline v. Houck, 621 So.2d 127 (La.App.2d Cir. 1993), writ denied.

Conclusion
For the reasons set forth above, the trial court's judgment is affirmed at appellant's cost.
AFFIRMED.