797 So.2d 700 (2000)
Robert Spec McCLENDON, II
v.
Milton Dwain BEL and John J. Dahmer.
No. 00 CE 2011.
Court of Appeal of Louisiana, First Circuit.
September 7, 2000.
*701 Robert Spec McClendon, II Amite, La., in proper person
Joe Arthur Sims, Hammond, La, for defendant-appellee, John J. Dahmer.
Richard D. McShan, Amite, La, for defendant-appellee, Milton Dwain Bel.
BEFORE: FOIL, GONZALES, FITZSIMMONS, KUHN, AND PETTIGREW, JJ.
PETTIGREW, Judge.
Robert Spec McClendon, II appeals the dismissal of his petition objecting to the candidacy of Milton Dwain Bel for the Office of Alderman[1] of District 3 for the Town of Amite City (Amite). For the reasons expressed, we affirm.

FACTS AND PROCEDURAL HISTORY
Robert Spec McClendon, II filed suit seeking to disqualify the incumbent Alderman of District 3, Milton Dwain Bel, as a candidate in the election scheduled for October 7, 2000.[2] Also made defendant is the Honorable John J. Dahmer, Clerk of Court of Tangipahoa Parish.[3] By judgment *702 signed August 31, 2000, at 8:50 a.m., the trial court dismissed Mr. McClendon's demands, finding Mr. Bel to be qualified as a candidate for Councilman of District 3. Mr. McClendon now appeals that decision.
In his petition, Mr. McClendon alleged that for the preceding year Mr. Bel had not been domiciled nor actually resided within the city of Amite. Mr. McClendon contends that, although when filing for candidacy, Mr. Bel listed his domicile as 106 East Pine Street within District 3, Mr. Bel actually resides with his family at 60221 Anderson Lane, outside the city limits.
Testimony established that Mr. Bel was born and raised in Amite. He and his wife married in Amite and in 1981, opened a restaurant, Cabby's, at 205 Northwest Central Avenue in Amite. On the second floor of Cabby's is a one-bedroom apartment. Mr. Bel and his wife occupied the apartment early in the marriage. Mr. Bel testified that he still sleeps and showers at the apartment on a frequent basis and eats all of his meals at that address. He also testified that he receives all of his mail at the Northwest Central Avenue address. Mrs. Bel described the apartment as having a furnished bedroom and kitchen. She confirmed that her husband keeps personal effects at the apartment. Mrs. Bel also testified that her husband sleeps at the apartment on occasion, although she has not slept there in over a year. Mr. Bel and his wife testified that Mrs. Bel and her children spend summers in North Carolina. During their absence, Mr. Bel stays mostly at 205 Northwest Central Avenue.
Mr. Bel also testified that his automobile is registered to the Northwest Central address. He listed 205 Northwest Central Avenue as his mailing address during qualifying. Mr. Bel stated that Northwest Central is where he lives "90% of the time." His wife indicated he is there eighteen hours a day, seven days a week. Mr. Bel testified that "[h]ome is 205 Northwest Central Avenue." When Mrs. Bel was asked why her driver's license lists Northwest Central Avenue as her address, she responded, "[b]ecause that's my permanent home." Moreover, Mrs. Bel testified that she and her husband do not rent out the apartment, "because its [their] home." The Bels' state and federal income tax returns list Northwest Central as their residence, and service of process for the purpose of this litigation was made to that address.
In 1985, the Bels purchased a home at 114 West Mulberry Street, also in the Amite city limits. The home backs up to Cabby's, and family members testified that they viewed Cabby's and the home on West Mulberry Street as one and the same. The Bels claimed a homestead exemption on the West Mulberry Street property for fifteen years. A policy of insurance also reflects that homeowner's insurance, with an effective date of October 20, 1999, was maintained on this property. Mr. Bel and his eldest daughter list West Mulberry Street as their address on their respective driver's licenses. The Bels fairly recently converted the West Mulberry Street home to a restaurant, Claire's. That restaurant also has an apartment. Although Mr. Bel has personal effects there, he indicates he does not stay there.
In 1996, the Bels purchased a piece of property at 60221 Anderson Lane, outside the Amite city limits. Mrs. Bel testified that she did not want to move from West Mulberry Street to the Anderson Lane address. However, she indicated that her husband felt the property would be a good investment. The home on Anderson Lane has three bedrooms. Mrs. Bel and her youngest daughter spend their nights in that home. When the oldest daughter visits *703 from college, she too sleeps at the home on Anderson Lane. Mrs. Bel also testified that her husband's vehicle can usually be found at Anderson Lane at night. The home is furnished and has been used for entertaining. Mr. Bel testified that he does not claim a homestead exemption on the property, nor is the property covered under a homeowner's policy. Rather, the home is insured with a standard fire policy. Other testimony established that if Mr. Bel could not be located at Cabby's, or if he was needed in the early morning hours, an attempt would be made to reach him at Anderson Lane.
The Bels own another residence at 106 East Pine Street in Amite. Mr. Bel testified that when he converted the West Mulberry Street residence into a restaurant, he switched his homestead exemption to East Pine Street. The Bels also changed their voter registration addresses from West Mulberry Street to East Pine Street in May of 2000. The Bel's oldest daughter's voter registration was changed from Mulberry Street, to Anderson Lane and finally, in May of 2000, to East Pine Street. It is undisputed that the Bels never occupied the home on East Pine Street. The home was rented to various individuals over the past year.
In oral reasons, the trial court observed that, "while I think the evidence indicates that Mr. Bel spends some of his time in the residence on Anderson [Lane], there is also an indication that he spends substantial portions of his time and has the capability and does, in fact, reside quite frequently in his business apartment."

DISCUSSION
As the party contesting candidacy, Mr. McClendon bears the burden of proving that Mr. Bel is disqualified. Pattan v. Fields, 95-2375, p. 2 (La.9/28/95), 661 So.2d 1320, 1320. Louisiana Revised Statutes 33:384 and 33:385 establish the qualifications of alderman as "an elector of the municipality who at the time of qualification... shall have been domiciled and actually resided for at least the immediately preceding year in the municipality."[4] In addition, those aldermen elected from wards must be residents of their respective wards.

Elector of the Municipality
Mr. McClendon argues that Mr. Bel is not a qualified elector because he has improperly registered to vote, assigning 106 East Pine Street as his residence address on the Louisiana Mail Voter Registration Form. The form specifies that the residence address "must be address where you claim homestead exemption if any." See La.R.S. 18:101. Mr. Bel does not dispute that he has never occupied the East Pine Street home. Mr. McClendon argues that because Mr. Bel does not qualify for a homestead exemption on the East Pine Street property, he is not properly registered to vote. We find this argument unpersuasive. The propriety of the Bels' homestead exemption is not dispositive of the resolution of this challenge to candidacy.
The testimony and documentary evidence establish that the Bels claimed the homestead exemption on the East Pine Street home. Therefore, in compliance with La.R.S. 18:101, a person claiming a homestead exemption "shall register and vote in the precinct in which that residence is located." La.R.S. 18:101(B). The voter registration of any person shall remain in *704 effect for so long as the registration is not canceled for a cause and in the manner set forth by statute. La.R.S. 18:191, et seq. John Russell, Registrar of Voters in and for the Parish of Tangipahoa, was asked if he had reason to doubt that the Bels were still registered to vote at the East Pine Street address. Russell testified, "I have no reason to doubt that. I haven't received any documentation indicating otherwise."

Domicile
The second criterion for qualification as a candidate is domicile. "Domicile" is defined by La.Civ.Code art. 38, as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.
A person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain in place. Herpin v. Boudreaux, 98-306, p. 7 (La.App. 3 Cir. 3/5/98), 709 So.2d 269, 271, writ denied, 98-0578 (La.3/11/98), 712 So.2d 859. The record is clear that Amite was Mr. Bel's domicile of origin. At the least, it can be concluded that Mr. Bel was domiciled within District 3 in Amite, when he and his wife originally resided in the apartment at 205 Northwest Central Avenue and when his family resided at West Mulberry Street.
A change in domicile occurs when there is a change in actual residence accompanied by an intention to make a new principal establishment or home. There is a presumption against change of domicile. Messer v. London, 438 So.2d 546, 547 (La.1983). Mr. Bel testified that he is in his eighth year as Alderman of District 3 for Amite. A public official who discharges his duties is presumed to continue the domicile he had when elected. Further, service in public office and candidacy for re-election strongly negate any intention to change domicile. Id. at 550.
Mr. McClendon argues that the trial court erred in failing to apply the legal presumption that Mr. Bel is domiciled with his wife at Anderson Lane. A man and wife are presumed to have the same domicile. Messer, 438 So.2d at 547. This presumption flows in favor of both. Although the testimony established that Mrs. Bel primarily resides at Anderson Lane, it did not establish that Mrs. Bel intends to remain in place. Intent to remain in place is a necessary element of domicile. Mrs. Bel testified that she considers 205 Northwest Central Avenue as her permanent home. She is registered to vote in District 3, in Amite. She indicated that she and Mr. Bel bought the Anderson Lane home with the intent to rent it or renovate it and resell it for a profit. Such a plan is consistent with the family's other rental property holdings.
Residence and domicile are not synonymous. A person can have several residences but only one domicile. Autin v. Terrebonne, 612 So.2d 107, 108 (La.App. 1 Cir.), writ denied, 604 So.2d 954 (La.1992). If a candidate has more than one residence, intention is the determinative factor in ascertaining the location of his domicile. Autin, 612 So.2d at 110. Intent is based on the actual state of facts *705 and not what one declares them to be. Sheets v. Sheets, 612 So.2d 842, 844 (La. App. 1 Cir.1992). Clearly Mr. Bel intended to maintain his domicile within Amite. Mr. Bel and his wife each testified that they have always considered 205 Northwest Central Avenue their home. Mr. Bel also testified that he transferred his homestead exemption to 106 Pine Street because he wanted to remain in his council district.
Domicile is a person's principal domestic establishment, as contrasted to a business establishment. Messer, 438 So.2d at 547. This court is mindful that 205 Northwest Central Avenue is the location of Mr. Bel's business establishment, Cabby's restaurant. The uncontradicted testimony is that Mr. Bel maintains an apartment at that same location. Mr. Bel testified that he showers, sleeps, and eats at this apartment. This court considers the apartment at 205 Northwest Central Avenue to be a domestic establishment, qualifying as a residence. The question remains whether the apartment at 205 Northwest Central Avenue is where Mr. Bel "actually resided" for the year preceding qualification for alderman.

Actually Resided
As we previously indicated, La.R.S. 33:384, which specifies the qualifications for mayor, and by way of La.R.S. 33:385, for alderman, was amended by 1993 La. Acts No. 522, § 1. The words "shall have been domiciled" were replaced with "shall have been domiciled and actually resided." In the context of a challenge to a mayoral candidate, the court in Bradley v. Theus, 28-714, p. 7 (La.App. 2 Cir. 2/20/96), 668 So.2d 1304, 1308-09, writ denied, 96-0469 (La.2/26/96), 668 So.2d 355, held that the 1993 amendment was at least as strong as the constitutional requirement that potential legislators be "actually domiciled" in their district for the year preceding an election. See La. Const. Art. 3, § 4. The court observed that the constitutional article was designed to eliminate a system under which candidates would establish a "political domicile" from which to seek office even though they chose to live and maintain their families in another area and were not truly representative of the district in which they sought election. Bradley, 28-714 at 7, 668 So.2d at 1309.
A person may maintain more than one residence and the fact that one is maintained for political purposes does not itself prevent a residence from being actual and bona fide. Autin, 612 So.2d at 108. There must be actual, physical use or occupation of quarters for living purposes before a bona fide residence is established. Williamson v. Village of Baskin, 339 So.2d 474, 476 (La.App. 2 Cir.1976), writ denied, 341 So.2d 1126 (La.1977).

CONCLUSION
The laws governing the conduct of elections should be liberally construed so as to promote rather than defeat candidacy. Any doubt as to the qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office. Myers v. McKeithen, 98-2094, p. 2 (La.App. 1 Cir. 9/18/98), 753 So.2d 252, 253.
Domicile and residency, for purposes of an election contest, present issues of fact. The standard of review of findings of fact by the trial court is the clearly wrong or manifest error standard. Daniels v. Richardson, 96-1570, p. 1 (La. App. 1 Cir. 7/31/96), 679 So.2d 461, 461-62. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Bailey v. Bolton, *706 98-2026, p. 3 (La.App. 1 Cir. 9/10/98), 755 So.2d 254, 256.
After a thorough review of the record, we find no manifest error with the trial court's findings and affirm the judgment of the trial court declaring Milton Dwain Bel qualified as a candidate for Councilman of District 3 of the Town of Amite City. Costs of this appeal are assessed against appellant, Robert Spec McClendon, II.
AFFIRMED.
GONZALES, J., concurring.
Since I was a member of the panel for the unpublished case of Russell v. Goldsby, 00 CE 2006 (9/6/00), I feel compelled to explain my concurrence in this case. Quite simply, the facts regarding Mr. Bel having resided in the appropriate district for more than one year are substantially different from the facts in the Russell v. Goldsby case and, thus, the basis of a different result.
NOTES
[1] For purposes of this opinion, the terms alderman and councilman are used interchangeably, as was done during testimony.
[2] The record shows that appellant is a qualified elector in Amite and was thus entitled to bring this action. See La.R.S. 18:491 and 18:1401.
[3] Mr. Dahmer is a nominal defendant made a party to this suit pursuant to La.R.S. 18:1402(A)(2).
[4] By 1993 La. Acts No. 522, § 1, La.R.S. 33:384, which specifies the qualifications for mayor, and by way of La.R.S. 33:385, for alderman, was amended. The words "shall have been domiciled" were changed to shall have been domiciled and actually resided."