LOLLEY, J.
 

 |T The State of Louisiana, Office of the District Attorney for the Second Judicial District, Bienville Parish, Louisiana (the “State”) appeals a judgment of the Second Judicial District Court, Parish of Bienville, State of Louisiana, dismissing the claims of the State against Stephone Taylor, the Mayor of the Town of Ringgold. For the following reasons, we affirm the judgment of the trial court.
 

 
 *1080
 
 Facts
 

 Stephone Taylor was elected the Mayor of the Town of Ringgold on October 20, 2007. At the time, his voter registration card showed his residence to be 1975 Military Road, Ringgold, Louisiana. That address is actually Taylor’s business address, and Taylor claims his residence and domicile to be 890 Military Road, Ringgold, Louisiana — his mother-in-law’s home. According to the State, Taylor neither owns nor rents a residence in Ringgold, but, in fact, he owns and lives in a residence located on Roy Road in Shreveport, Caddo Parish. The State asserts that Taylor purchased the Roy Road residence shortly after his election, and he maintains a homestead exemption on that property.
 

 A complaint was made to Paula Stewart, the Bienville Parish Registrar of Voters, that Taylor had moved outside of Ring-gold. As a result, on July 24, 2009, Stewart sent out a 21-day voter challenge letter pursuant to La. R.S. 18:193 G. Taylor did not respond, and Stewart removed him from the voter rolls on August 17, 2009. On August 24, Taylor was reinstated in Bienville Parish pursuant to his request.
 

 | aThe State also received a complaint in regards to Taylor’s residence, and after investigating the complaint, the State filed a legal opinion and published it in the
 
 Bienville Democrat,
 
 the official journal for Bienville Parish. The State’s petition was filed within 10 days of publication. The trial of the matter began on September 3, 2009, and concluded on September 8, 2009. When the State concluded its case, Taylor moved for a judgment of involuntary dismissal, which was granted by the trial court. This appeal by the State ensued.
 

 Discussion
 

 Although the State brings four separate assignments of error, the thrust of its appeal can be boiled down to two simple issues: Taylor’s status as an elector in Ringgold, Bienville Parish and his domicile. As the party contesting candidacy, the State bears the burden of proving that Taylor is disqualified.
 
 Pattan v. Fields,
 
 1995-2375, (La.09/28/95), 661 So.2d 1320, 1320. Louisiana R.S. 33:384 sets forth the qualifications of Mayor: “The mayor shall be an elector of the municipality who at the time of qualification as a candidate for the office of mayor shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.” First, the State argues that Taylor failed to remain an elector of the town of Ringgold when the Registrar of Voters removed him from its rolls for moving outside of the city as evidenced by the filing of a homestead exemption in Caddo Parish. Second, the State urges that Taylor is also ineligible to serve as mayor, because he failed to maintain his domicile in the municipality. We disagree on both counts.
 

 \ ¿Taylor's Status as an Elector
 

 The State’s initial argument regarding Taylor’s elector status is based on the flawed premise that Taylor was
 
 properly
 
 removed from the voters’ rolls, resulting in his failing to be an elector as required by La. R.S. 33:384. At the trial of this matter, Paula Stewart, Registrar of Voters, testified that someone from the district attorney’s office had informed her of complaints that Taylor had a house in Caddo Parish. In order to verify this information that Taylor had moved outside of Ringgold, she determined that Taylor had obtained a homestead exemption in Caddo Parish.
 
 [1]
 
 Then, Stewart stated that
 
 *1081
 
 she acted pursuant to La. R.S. 18:198 G, which states:
 

 G. (1) If the registrar has reason to believe that the name of a person has been illegally or fraudulently placed upon the registration records or that a registrant no longer is qualified to be registered for a reason other than a change of residence or address, or that the registrant has deliberately given an incorrect address, he shall immediately notify the person. The notice shall be mailed first class, postage prepaid, to the address on file at the registrar’s office.
 

 2) The notice shall state the alleged irregularity in the registration and shall inform the person that he must appear in person at the office of the registrar of voters within twenty-one days after the date on which the notice was mailed to show cause why his name should not be removed.
 

 (3) If the registrant fails to appear within the required twenty-one days, the registrar shall cancel his name from the list of eligible voters. If the registrant appears and shows cause | ¿within the twenty-one days, the registrar shall not cancel the registration....
 

 We believe that in this particular case, subsection G of the statute was erroneously applied by Stewart. She testified that she did not believe there was any illegality or fraud involved with Taylor’s registration, which is the first reason for a registrar to act under subsection G. The subsection also provides a second reason for action, that being “that a registrant no longer is qualified to be registered for a reason other than a change of residence or address, or that the registrant has deliberately given an incorrect address.” Stewart did not state that Taylor had deliberately given an incorrect address. In fact, the motivating factor for Stewart’s actions was a complaint that Taylor had a change in residence to outside of Ringgold; thus her actions were not for a “reason other than a change of residence or address.” Although she claimed that she sent the letter because of his homestead exemption, it is clear from her testimony that she only investigated the status of his homestead exemption to verify where he might be domiciled. In other words, Stewart was acting on a complaint that Taylor had a house (i.e., a “residence or address”) outside of Ringgold, and she considered his homestead exemption in Caddo Parish as proof of that fact. Thus, La. R.S. 18:193 G was inapplicable to the situation involving Taylor, because Stewart had a reason to believe that Taylor had a change of residence or address. So considering, we conclude that the proceeding against Taylor pursuant to La. R.S. 18:193 G was in error, and his name should have never been cancelled from the list of eligible voters.
 

 | sIn fact, considering that Stewart had reason to believe that Taylor had moved his residence outside of the town of Ring-gold (her evidence being the filing of the homestead exemption in Caddo Parish), Stewart should have proceeded under subsection A of La. R.S. 18:193, which states:
 

 When the registrar has reason to believe that a registrant no longer is qualified to be registered, or that a registrant has
 
 *1082
 
 changed his residence, he shall immediately notify the person by sending the address confirmation card to the registrant and place the voter on the inactive list of voters. However, a person shall not be placed on the inactive list of voters if there is address information available to the registrar from the United States Postal Service or its licensee which indicates the voter has moved to another address within the parish. (Emphasis added).
 

 Considering this procedural error at the very earliest stages of this action against Taylor, we determine that he never lost his status as an elector in the municipality for which he served as mayor, i.e., the town of Ringgold, but should merely have been placed on the inactive list of voters until the residency question was clarified. Therefore, it follows that the State’s argument is based on an incorrect premise that there was a lapse in Taylor’s status as an elector in Ringgold.
 

 Taylor’s Domicile
 

 Louisiana R.S. 33:384 also mandates that a mayor “shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.” The domicile of a natural person is the place of his habitual residence. La. C.C. art. 38. It is well settled that residence and domicile are not synonymous, and a person can have several residences, but only one domicile. La. C.C. art. 39;
 
 Russell v. Goldsby,
 
 2000-2595 (La.09/22/00), 780 So.2d 1048. As stated in
 
 Russell, supra
 
 at 1051:
 

 |fiA person’s domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain. The question of domicile is one of intention as well as fact, and where it appears domicile has been acquired in another place, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed by positive and satisfactory proof of establishment of a domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. Absent declaration to change domicile, proof of this intention depends upon circumstances; there is a presumption against change of domicile. (Citations omitted).
 

 The case law regarding domicile reveals that Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Since domicile is generally defined as residence plus intent to remain, a party’s uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary.
 
 Landiak v. Richmond,
 
 2005-0758 (La.03/24/05), 899 So.2d 535.
 

 In the absence of a formal declaration as provided for in La. C.C. art. 45, when documentary or other objective evidence casts doubt on a person’s statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact.
 
 Id.
 
 Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver’s license address, statements in notarial acts, and evidence of where the person’s property is mostly housed. Obviously, the more of these items presented by a party opposing |7candidacy in a given case to show lack of domicile in the district, the more difficult it will be for an individual to overcome the plaintiffs evidence.
 
 Id.
 

 
 *1083
 
 A public official who discharges his duties is presumed to continue the domicile he had when elected. Further, service in public office and candidacy for re-election strongly negate any intention to change domicile.
 
 McClendon v. Bel,
 
 2000-2011 (La.App. 1st Cir.09/07/00), 797 So.2d 700.
 

 Here, the only documentary evidence of Taylor’s alleged change in domicile was the homestead exemption obtained for the Caddo Parish house, but we do not believe that is necessarily dispositive to prove that Taylor intended to change his domicile.
 
 See McClendon, supra
 
 at 703. At the time of his election in October 2007, and at the time of the trial in September 2009, his driver’s license and voter registration both reflected Ringgold addresses. At the trial of the matter, both Taylor and his wife, Denise, testified that Denise had applied for the homestead exemption on the Caddo Parish house without Taylor’s knowledge. In fact, she even signed his name on the application. Taylor stated that he did not know she had applied for the homestead exemption until he received the letter from the Bienville Parish Registrar of Voters.
 
 [2]
 
 Dorrie McDonald, a supervisor in the homestead exemption department at the Caddo Parish Tax Assessor’s office, verified that Denise Taylor had called to obtain the homestead exemption. According to McDonald, Denise initially said only she lived in the property, to which McDonald told her that she could only get half of the 18exemption. Upon receiving that information, Denise said she and her husband both resided in the property. Later, after receiving the letter from Stewart, Denise called and had the homestead exemption removed from the property.
 

 The only other evidence of Taylor’s change in domicile was testimony from Officer Jamie Phill, a Blanchard Police Department patrol officer. Officer Phill patrolled the area where the Taylors’ Cad-do Parish house was, and he testified that he would see the Taylors’ cars parked at the house.
 

 The primary evidence of Taylor’s intent regarding his domicile came from witness testimony, primarily from Taylor himself, but also his wife, Denise, their son, and her mother-in-law, Revelma Thomas. Taylor testified that he primarily resided at the 890 Military Road house in Ringgold (a house owned by his mother-in-law), and he intended that to be his domicile. It is undisputed that Taylor operates a convenience store in Ringgold, also located on Military Road. At trial, Taylor explained his normal daily activities, which revolve around running his store and his mayoral duties. Part of his daily activities include spending the night and sleeping at 890 Military Road (our calculations from his testimony show Taylor to be a very active man, sleeping only about four to six hours a day). He also stated that the majority of the couple’s furniture and personal belongings are not at the Caddo Parish house, and that he had furniture at his mother-in-law’s home on Military Road. This was corroborated by his mother-in-law, Revel-ma Thomas, who also lives at that address. As explained by Taylor, and later |9his wife, the Taylors only purchased the Cad-do Parish home in order to be closer to their son’s school in Shreveport. Taylor testified that it was not his intent for that house to be his domicile, and that only Denise and the couple’s son live primarily at the Caddo Parish house during the week when the boy is in school. Accord
 
 *1084
 
 ing to Taylor, during the summer, he spends no nights at the Caddo Parish house, and Denise and their son spend most of their time in Ringgold (Denise helps with the store as well). This testimony was corroborated by Denise and for the most part by the Taylors’ 15-year-old son and 76-year-old mother-in-law.
 

 The facts of this case are extremely close to those in
 
 Russell, supra.
 
 In that case, the mayor of Amite’s eligibility to be mayor was being challenged by an elector of the city pursuant to La. R.S. 38:384. In
 
 Russell,
 
 the mayor of Amite, Dr. Reggie Goldsby, stated he lived within the city limits and conducted his medical practice within as well; however, he also had a “camp” outside the city limits where he stayed on the weekends and in the summer months. Notably, Dr. Goldsby did have a homestead exemption on his Amite residence. Based primarily on Dr. Golds-by’s stated intent not to change his domicile to outside of the city limits, the Louisiana Supreme Court held that he actually resided in the city where he sought reelection, and the plaintiff had failed to show that the mayor had intended to change his domicile.
 
 Id.
 
 at 1053.
 

 The facts of Taylor’s case are much the same, but for the fact that Denise erroneously applied for the homestead exemption in Caddo Parish. Both the Taylors indicated that was obviously a mistake and that Taylor’s | inintent remained to be domiciled in Ringgold. We are further persuaded that the application for the homestead exemption was a careless mistake when we consider that the Taylors owned only one residence. Had they owned two residences, one in Bienville Parish and one in Caddo Parish, and applied for the homestead exemption in Caddo Parish, we may have been inclined to have seen that as intent to affirmatively change and establish domicile in Caddo Parish. That certainly was not the case here. Rather, it appears that Taylor had every intent in maintaining his domicile in Ringgold, Bien-ville Parish, and the trial court was certainly within its province in believing his testimony. A factfinder’s decision that is based on its discretion to credit the testimony of one of two or more witnesses can virtually never be wrong.
 
 Smith v. Dishman & Bennett Speciality Co.,
 
 35,682 (La.App.2d Cir.01/23/02), 805 So.2d 1220.
 

 Admittedly, at first blush, it certainly appears that Taylor was not in compliance with La. R.S. 33:384. However, considering the particular facts of this case, we cannot say that the trial court committed error in its determination that Taylor’s status as an elector had not lapsed nor did he have a change in domicile outside of the town of Ringgold. Hopefully, in the future, Taylor will continue to maintain his domicile in Ringgold in a more transparent way in order to avoid any appearance of impropriety.
 

 Conclusion
 

 For the foregoing reasons, we affirm the trial court’s judgment in favor of Stephone Taylor, the Mayor of Ringgold, Louisiana. Costs of these |nappellate proceedings in the amount of $121.50 are to be assessed to the State of Louisiana, Office of the District Attorney for the Second Judicial District, Bienville Parish, Louisiana.
 

 AFFIRMED.
 

 [1]
 

 . We note that
 
 La.
 
 R.S. 18:101 B states, in pertinent part:
 

 For purposes of
 
 the
 
 laws governing voter registration and voting, "resident” means a citizen who resides in this state and in the
 
 *1081
 
 parish, municipality, if any, and precinct in which he offers to register and vote, with an intention to reside there indefinitely. If a citizen resides at more than one place in the state with an intention to reside there indefinitely, he may register and vote only at one of the places at which he resides. However, if a person claims a homestead exemption, pursuant to Article VII, Section 20 of the Constitution of Louisiana, on one of the residences, he shall register and vote in the precinct in which that residence is located....
 

 [2]
 

 . Taylor explained that he did not respond to the letter during the 21-day period because his son had suffered an injury for which he needed surgery. Apparently, he and his wife were occupied with that and overlooked Stewart's letter.