Dear Mr. Cleveland:
You have requested an opinion of the Attorney General concerning residency requirements applicable to an alderman of the Town of Richwood. Within your request, you state that you are an alderman for the Town of Richwood. You primarily reside with your parents at their home which is located within Richwood. Additionally, you rent an apartment located outside of the Town of Richwood where you spend approximately fifteen percent of your time. The apartment is located outside of the Town of Richwood. You ask whether a vacancy will be created if an alderman maintains a residence outside of the municipality from which he is elected.
The Town of Richwood is a Lawrason Act municipality and the provisions of La.R.S. 33:321, et seq. apply. La.R.S. 33:385(A) lists the qualifications for the office of alderman and provides, in pertinent part:
The qualifications of the aldermen shall be the same as are prescribed for the mayor, and in addition, those elected from wards must be residents of their respective wards.
La.R.S. 33:384 lists the qualifications for the office of mayor and provides:
The mayor shall be an elector of the municipality who at the time of qualification as a candidate for the office of mayor shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.
Article VII, Section 13 of the 1921 Louisiana Constitution provided that the office of alderman would become vacant should the incumbent move from the district or ward from which he was elected. However, this provision was not carried forward in the 1974 Constitution, nor was it carried forward as statutory law. *Page 2 
Presently, the only applicable constitutional provision is Article X, Section 28 of the 1974 Louisiana Constitution which states "[a] vacancy, as used in this Constitution, shall occur in the event of death, resignation, removal by any means, or failure to take office for any reason." Also, La.R.S. 18:581(3) defines the term "vacancy" in an elective office and provides:
"Vacancy" occurs in an elective office when the office is or will be unoccupied by reason of the death of the official who was elected to the office, or by reason of his retirement or resignation, removal from office by any means, failure to take office for any reason, or when it becomes certain that the person elected to the office will not take the office on the day when the term for which he was elected commences, or when the person elected to or holding the office no longer meets the residence or domicile requirements of that office, any declaration of retention of domicile to the contrary notwithstanding, or when an office is created due to a reclassification of a municipality. (Emphasis added.)
In La. Atty. Gen. Op. No. 09-0065, this office opined that a vacancy does not automatically occur when an alderman of a Lawrason Act municipality moves outside of the town. However, the board of aldermen has the authority to declare the office of alderman vacant provided the current alderman no longer meets the residency or domicile requirements of that office.
The fundamental issues the board of aldermen must address in determining if a vacancy exists within the office of alderman is whether or not the alderman is domiciled and actually resides within the municipality. Turning to the issue of domicile first, La.C.C. art. 38
defines the domicile of a natural person as "the place of his habitual residence." The terms "residence" and "domicile" are not synonymous.[1]
A natural person may reside in several places but may not have more than one domicile.[2]
Domicile is maintained until acquisition of a new domicile.[3] A natural person changes domicile when he moves his residence to another location with the intent to make that location his habitual residence.[4]
There is a presumption against a change in domicile.[5] Proof of a person's intent to establish or change domicile depends on the circumstances.[6] When a person holds public office, the law presumes that his domicile continues in the place where he exercises his public functions.[7] *Page 3 
Domicile is an issue of fact that must be determined on a case-by-case basis.[8] Domicile consists of two elements, residence and intent to remain.[9] If the official has more than one residence, intention is the determinative factor in ascertaining the location of his domicile.[10] In establishing domicile, intent is based on the actual state of facts and not what one declares them to be.[11] Various indicia have been set forth to prove, by a totality of the circumstances, whether an individual has established a domicile. Among these are where a person sleeps, takes his meals, has established his household, and surrounds himself with family and the comforts of domestic life.[12] In addition, courts have looked at where the person is registered to vote, where his motor vehicles are registered, where he maintains bank accounts and receives mail, where he transacts business affairs, and where he leases or owns property.[13] Finally, courts have given great weight to a person's intent when ascertaining the location of his domicile.[14]
Therefore, the issue of a local official's domicile is an issue of fact that must be determined on a case-by-case basis by looking at the totality of the circumstances.[15] Our office cannot opine as to a local official's domicile. To make such factual determinations would contravene our Office's long-standing policy not to render opinions on issues of fact.[16]
The second issue the board of aldermen must address is whether or not the alderman "actually resides" within the municipality. A person may maintain more than one residence, and the fact that one is maintained for political purposes does not itself prevent the residence from being actual and bona fide.[17] However, there must be actual, physical use or occupation of the quarters for living purposes before a bona fide residence is established.[18] Even a temporary absence from a place of residence does not necessarily mean that a person ceases to be a resident.[19] The rationale is that residency is not lost as long as residence exists in fact with the requisite intent.
However, Louisiana courts have found a legal distinction between the requirement that a candidate "actually resided" at a place and the requirement that a candidate shall have been a "resident" of a place. The former requirement that a candidate "actually resided" at a place is a higher, more stringent standard requiring a stronger and more regular presence at the residence, whereas the requirement of simple residency is a *Page 4 
lower threshold.[20] Furthermore, the Louisiana Supreme Court has defined the term "actual residence" as "a real residence, not a fictitious residence simply designed to circumvent the residency requirements."[21]
The determination of whether an alderman "actually resides" within the municipality is also a question of fact to be determined by the totality of the circumstances. Mere isolated facts cannot be relied on wholly to determine the question. Whether a local official "actually resides" in a particular place, will depend upon the extent of his continued contact and presence in that place, the expected duration of the absence and his intention to return to that place.[22]
In conclusion, it is the opinion of this office that a vacancy does not automatically occur when an alderman of a Lawrason Act municipality has a residence outside of the municipality. However, the board of aldermen may declare a vacancy within the office of alderman provided the board determines the alderman is no longer domiciled or "actually residing" within the municipality. In reaching its determination, the board of aldermen must carefully consider all factors surrounding the alderman's move to determine if his intent is to change his domicile and if the alderman "actually resides" within the municipality.
We hope that this opinion has adequately addressed the legal issues you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
 With best regards,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY: __________________________
 Erin C. Day
 Assistant Attorney General
 JDC: ECD
[1] Wilson v. Butler, 513 So.2d 304 (La.App. 1 Cir. 1987).
[2] La.C.C. art. 39.
[3] La.C.C. art. 44.
[4] Id.
[5] Messer v. London, 438 So.2d 546 (La. 1983).
[6] La.C.C. art. 45.
[7] Id. at 547.
[8] Landiak v. Richmond, 2005-0758 (La. 3/24/05), 899 So.2d 535,citing, Darnell v. Alcorn, 99-2405 (La.App. 4 Cir. 9/24/99),757 So.2d 716.
[9] McClendon v. Bel, 2000-2011 (La.App. 1 Cir 9/7/00), 797 So.2d 700,704.
[10] McClendon at 704.
[11] Successions of Rhea, 227 La. 214, 78 So.2d 838 (1955).
[12] Sheets v. Sheets, 612 So.2d 842, 844 (La.App. 1 Cir. 1992).
[13] Autin v. Terrebonne, 612 So.2d 107 (La.App. 1 Cir. 1992).
[14] Wilson v. Shea, 90-1449 (La.App. 4 Cir. 8/17/90), 565 So.2d 1105;Autin v. Terrebonne, supra.
[15] Landiak v. Richmond, 2005-0758 (La. 3/24/05), 899 So.2d 535,citing, Darnell v. Alcorn, 99-2405 (La.App. 4 Cir. 9/24/99), 757 So.2d 716.See also La. Atty. Gen. Op. No. 09-0065.
[16] La. Atty. Gen. Op. No. 445 (1918-19).
[17] Id. at 108.
[18] Mclendon, 797 So.2d at 705.
[19] Williford v. Grady, 96-1040 (La.App. 3 Cir. 8/5/96),688 So.2d 1072.
[20] Bradley v. Theus, 28,714 (La.App. 2 Cir. 2/20/96), 668 So.2d 1304,1038, writ denied, 96-0469 (La. 2/26/96), 668 So.2d 355.
[21] Russell v. Goldsby, 2000-2595 (La. 9/22/00), 780 So.2d 1048, 1052.
[22] See La. Atty. Gen. Op. Nos. 02-47 and 91-241.