351 So.2d 1234 (1977)
COLLECTOR OF REVENUE, Shirley McNamara
v.
MURPHY OIL CORPORATION.
COLLECTOR OF REVENUE, Shirley McNamara
v.
TENNECO OIL COMPANY.
Nos. 8398, 8399.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1977.
*1235 H. Paul Simon, Thomas R. Blum, Deutsch, Kerrigan & Stiles, New Orleans, for Tenneco Oil Co. and Murphy Oil Corp., appellees; Deutsch, Kerrigan & Stiles, New Orleans, of counsel.
Linda S. Paine, Houston, for Tenneco Oil Co.
Thomas P. James, El Dorado, for Murphy Oil Corp.
W. Steven Mannear, Baton Rouge, for Collector of Revenue, State of La., defendant-appellant.
Before STOULIG, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
This case arises from the attempt of the Collector of Revenue to assess Murphy Oil Corporation and Tenneco Oil Company for alleged deficiencies in gasoline taxes paid by them during the years 1971 through 1973. In 1974, the Collector sought to make the assessments against the two oil companies who then, pursuant to R.S. 47:1431, petitioned the Board of Tax Appeals for relief. After a consolidated hearing, the Board vacated and set aside the assessments. Pursuant to R.S. 47:1434-36, the Collector sought review in the Civil District Court, Orleans Parish. That court affirmed the decision of the Board of Tax Appeals, and the Collector has appealed to us.
In this court the Collector urges two specifications of errors, the first that the district court erred in its determination of the scope of review of the case, and the second that the Board of Tax Appeals and the Civil District Court erned as a matter of law in determining that the oil companies may pay gasoline taxes on an adjusted temperature basis at a time prior to their actual "sale" or "transfer" to a purchaser. We first consider the procedural aspects.
The Collector of Revenue is the administrator of a department of the executive branch of the government of Louisiana charged with the collection of taxes, including the taxes at issue herein. His decision on such a tax claim is appealable to the Board of Tax Appeals, which was created as an independent agency in the executive branch of the state government by R.S. 47:1401 to act as an appeal board to hear and decide questions of law and fact arising from disputes between tax payers and the Collector in the enforcement of certain taxes. Judicial review of decisions of the board is afforded by R.S. 47:1434, which provides that the original transcript of the record, together with all exhibits and evidence thereto attached, shall be the basis for any action on review and the decision of the district court shall be rendered upon the said record as made up before the board. § 1435 grants exclusive jurisdiction to the district courts to review the decisions of the board, and the court shall have the power to affirm or, if the decision or judgment of the board is not in accordance with law, to modify, or to reverse the decision or judgment of the board, with or without remanding the case for further proceedings as justice may require.
It should be noted that judicial review is the exercise of the district court's exclusive original jurisdiction under Constitution of 1921, Article 7, § 35, and is not considered as an appeal in the same sense as an appeal from the district court to the appellate courts of our state. Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971). It is apparent from a reading of the statutes above cited conferring jurisdiction upon the district courts that the scope of review is limited by the provisions of those statutes, and is not unlimited. The statutes provide that the record of the proceeding before the board shall be the basis for any action on *1236 review, and this, coupled with the provision that the court has the power to modify or reverse a decision if not in accordance with law, by implication limits the scope of review to facts on the record and questions of law.
The scope of judicial review of the Board of Tax Appeals is not governed by the administrative procedure law set out in R.S. 49:951, et seq., except for its rule making powers described therein. R.S. 49:967 specifically exempts the Board in its consideration of cases such as this where a decision is required on a particular matter as applied to a specific set of facts. In this type of case, the Board acts as a trial court, its findings of fact should be accepted where there is substantial evidence in the record to support them, and should not be set aside unless they are manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. If the Board has correctly applied the law and adhered to correct procedural standards, its judgment should be affirmed.
While there appeared to be some confusion in the limitations of review announced by the trial judge, to-wit: "Whether that Board acted arbitrarily or capriciously in reaching its decision" (which would seem more appropriate to the action of the Collector or to the Board's rule making authority), we think his overall statement of reasons for judgment indicate that he has in fact given the review proper consideration and has reached a correct result. We note in this case that there is really no problem with relevant facts. They are almost entirely conceded or uncontested. Indeed the trial was conducted on the premise that the Board would first decide the legal problems involved, and if it were felt that other facts would become necessary, the parties could reach a determination of those facts.
We now pass to the second issue, the basis of computation or assessment of the gasoline taxes provided in Louisiana Constitution of 1921, Article 6-A and R.S. 47:711. It is the position of the Collector that the law imposes the gasoline taxes upon the sale, or the use or consumption of gasoline and that the type of measurement of gallons sold at this last transaction is the correct basis for imposition of the tax. On the other hand, the two gasoline companies contend that the tax is imposed upon the gasoline at the time of its manufacturing, or upon its importation into the state, and that the tax should be imposed upon the amount of gallons adjusted at 60°F. temperature.
The dispute stems from the fact that the volume of gasoline varies considerably in relation to atmospheric temperature, and thus a given amount of gasoline at a low atmospheric temperature will contain less gallons than that same gasoline at a higher temperature. For this reason it is conceded that the industry in general in handling bulk gasoline adjusts the amount of gallons sold to the computed amount of gallons at standard 60° F. temperature. Louisiana, being a state with rather warm climate, has an average temperature in excess of 60 F. and if gasoline were sold at atmospheric temperatures it would result in more gallons and more tax.
The state has long recognized the application of this industry standard, and its taxes are being collected on the basis of the net gallons computed at 60. The precise problem that arises in this case, is that the Collector recognized that these two dealers, in their sales to others, could compute the gasoline tax upon the adjusted net gallons withdrawn from their holding tanks. However, these two dealers also owned individual gas stations which sell to customers at retail, and although they computed the tax in the same manner, the gasoline is merely transferred in bulk from their holding tanks, and it is not actually sold until it is pumped from the gasoline station into a customer's tank for consumption. This latter transaction takes place at the atmospheric temperature, and would result in more gallons sold. The parties have agreed on the amount of additional tax that would be assessed in the event that this sale to the ultimate customer from the gasoline station should be the basis for imposition. In that light we proceed to examine the applicable statutory and case law.
*1237 R.S. 47:723 states that the tax shall be "due and payable immediately upon the producing, refining, manufacturing, blending or compounding of any gasoline or motor fuel for sale, use or consumption within the state". Constitution of 1921, Article 6-A § 4 requires every dealer "shall immediately upon the producing, refining, manufacturing, blending or compounding of any gasoline, benzine, naptha or other motor fuel pay to the Collector of Revenue the tax levied herein, which is hereby made due and payable immediately upon said producing, refining, manufacturing, blending or compounding." Similarly importers of gasoline are required to pay the tax, made due and payable immediately upon the same coming within the boundaries of this state. In considering the application of this law, the courts have found that the tax was an excise tax imposed upon the dealer (defined as producer, etc. or importer) for the right or privilege of selling, using, or consuming gasoline in this state, and was due and payable immediately upon the manufacture or importation of the product before transportation, sale or other disposition actually occurred. See State v. Sinclair Refining Company, 195 La. 288, 196 So. 349 (1940); Standard of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634 (1941); State v. Standard Oil Company of Louisiana, 190 La. 338, 182 So. 531 (1938).
Despite this, the Collector contends that the assessment of the tax may be deferred in some instances. The Collector refers us to those sections of the law permitting a dealer to furnish a bond, Const. of 1921, Art. 6-A § 4 and R.S. 47:722, 723, by which procedure the dealer may make a report monthly and delay payment of the tax until the report is made, not later than the 20th day of the next month. However, those provisions do not change the requirement that taxes be paid on the amount of gasoline refined or blended, but simply provide a method whereby the dealer may delay payment from immediately upon production or importing, (presumably daily reports) to one monthly payment when the report is to be filed as provided. State v. Sinclair Refining Company, supra. The time of imposition of tax and its payment is based upon production or importation, not final sale.
We note that the constitutional and statutory provisions then in force did not provide a basis for the measurement of the gallons upon which the tax is imposed.[1] Additionally, under the evidence adduced in this case, it does not appear that the Collector of Revenue under his rule making authority has promulgated any such regulation. Indeed, the evidence shows that the Collector has generally accepted the common, industrywide practice of measuring gasoline by adjusting gross standard gallons to gallons at 60° F. The Collector does not dispute this standard of measurement for bulk sales to others, but simply contends that it should not be used when a dealer transfers bulk gasoline to its own stations selling at retail to the public.
It was obvious to the Board of Tax Appeals, that such a scheme would unduly penalize dealers who operated their own stations in that they would be required to pay the tax on a higher basis than sales made to other customers. The Collector has offered no evidence to show the factual justification for any classification or distinction in the imposition of the tax, and simply relies upon the wording of the statutes relative to collection, which he contends is the time of ultimate sale, not of production or importation. We have already decided that point adversely. It is not within our authority to change the wording of the Legislative provisions.
For the reasons assigned, the judgment appealed is affirmed.
AFFIRMED.
NOTES
[1] R.S. 47:723 was later amended by Act 609 of 1976 effective January 1, 1977, which specifically provided the dealer with the option to pay on gallons adjusted to 60° as well as other bases of assessment.