550 So.2d 1345 (1989)
LOUISIANA POWER & LIGHT COMPANY
v.
Shirley McNAMARA, Secretary of the Department of Revenue and Taxation, State of Louisiana.
No. CA 88 0984.
Court of Appeal of Louisiana, First Circuit.
October 11, 1989.
Rehearing Denied November 17, 1989.
*1346 George Riess, New Orleans, La., for plaintiff-appellant, Louisiana Power and Light Co.
James C. Russell, Jr., Baton Rouge, La., for defendant-appellee, Shirley McNamara, et al.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
The plaintiff, Louisiana Power & Light Company (LP & L), appeals the trial court's judgment in favor of the defendant, Shirley McNamara, Secretary of the Department of Revenue and Taxation, State of Louisiana (Department), whereby the court upheld a Board of Tax Appeals (Board) decision assessing LP & L with an additional one percent sales/use tax on two particular contracts entered into before July 29, 1970, the date on which the additional sales/use tax became effective.

BACKGROUND
On July 28, 1970, Middle South Services, Inc. (MSS) entered into two letter agreements relative to items to be constructed at LP & L's Waterford 3 power plant at Taft, Louisiana: one with Westinghouse Electric Corporation (Westinghouse) for the purchase of a steam turbine generator and auxiliary turbines for the price of $31,786,598.00 and the other with Combustion Engineering, Inc. (CE) for the purchase of a nuclear steam supply system for the price of $43,845,000.00. Subsequently, MSS assigned the two contracts to one of its member companies, LP & L.
Included in both contracts was the provision that the stated contract price did not include the two percent Louisiana sales tax in effect as of the contract date. Thereafter, components to the generator and nuclear steam supply system were transported into Louisiana for several years and erected at the Taft site under the supervision of personnel provided by Westinghouse and CE in accordance with the plant's construction schedule. The actual construction labor was provided by other sources. Throughout this period of time, sales/use tax in the amount of two percent was paid.
On July 29, 1970, an increase in the sales/use tax from two to three percent became effective. Also in 1970, the Legislature passed La.R.S. 47:305.11 which provided limited exemptions from the sales/use tax increase. In 1971, the Department assessed LP & L a sales/use tax for the full three percent on contracts entered into before June 29, 1970. LP & L countered, contending that La.R.S. 47:305.11 exempted them from the additional one percent tax. Thereafter, on June 5, 1974, the Department withdrew its proposed assessments in a letter from F.J. Ivey, the manager of the sales tax section.
On August 5, 1980, the Department sent LP & L a notice of a proposed assessment in the amount of $1,545,975.13, $1,397,541.46 of which presumably represented an additional one percent use tax plus interest for the years 1976 through 1979 on property brought into the state as a result of the contracts with Westinghouse and CE. LP & L protested the proposed assessment, but the Department ignored LP & L's attempt to use La.R.S. 47:305.11 and issued a sales/use tax assessment against LP & L on December 10, 1982, in the amount of $1,787,820.53. On February 7, 1983, LP & L filed a petition with the Board seeking review of the assessment based on its contention that La.R.S. 47:305.11 was applicable, and the Board held a hearing on this matter on May 29 and 30, 1985. Thereafter, on October 4, 1985, the Board issued its judgment in favor of the Department in the net amount of $1,526,904.53 plus interest. No written reasons were rendered.
On November 4, 1985, LP & L filed a petition in District Court to review the decision of the Board, and furnished the bond as required by La.R.S. 47:1434. Thereafter, the matter came before the trial court for oral argument on May 22, 1987. The trial judge granted counsel an additional *1347 thirty days to submit supplemental memoranda. On March 7, 1988, the trial court issued written reasons for judgment, and signed the written judgment on March 22, 1988, in favor of the Department in the net amount of $1,811,802.56 plus interest and court costs.
LP & L then perfected this suspensive appeal, alleging that the trial court erred in affirming the Board's failure to accord LP & L the benefits of the exemption provided by La.R.S. 47:305.11, and in affirming a purported finding of the Board that the two contracts at issue were not construction contracts. The Department did not appeal or answer the appeal.
After a thorough review of the record before the Board, we agree with the Board and the trial court, and affirm.

DISCUSSION
The standard of review of a decision of the Board was correctly enunciated in Collector of Revenue v. Murphy Oil Corporation, 351 So.2d 1234 (La.App. 4th Cir.1977), and approved by the supreme court in St. Pierre's Fabrication and Welding, Inc. v. McNamara, 495 So.2d 1295 (La.1986). As stated in St. Pierre's, 495 So.2d at 1298:
Judicial review of a decision of the Board is rendered upon the record as made up before the Board and is limited to facts on the record and questions of law. The Board's findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence on the entire record.
In Murphy, 351 So.2d at 1236, the court further specified that "[i]f the Board has correctly applied the law and adhered to correct procedural standards, its judgment should be affirmed."
In the instant case, the appellant contends the court erred in affirming a finding by the Board that the two contracts at issue were not construction contracts. However, since the Board did not issue reasons for judgment, we are unable to ascertain its precise factual findings and must look at the record before the Board to determine if the Board correctly applied the law to the facts before it. As stated by the trial court, "a review of the contract and what is contained within its four corners and what the contract proposes to do is a determining factor in deciding the exact nature of the contract." Westinghouse contracted to furnish and deliver a steam turbine generator unit and two auxillary turbines and to provide the services of a qualified field engineer. In other contract documents, reference was made to "seller" (Westinghouse) furnishing field representatives "to provide technical advice and direction to the Purchaser regarding installation" of the generator at the Taft site. Seller (Westinghouse) also agreed that "[a]lthough Purchaser erects the machines under Seller's direction" Westinghouse would guarantee the unit's performance "as though Seller had furnished all the erection equipment and erection labor to completely erect the machine."
The Civil Code articles on building contracts contemplate a letting out of services rather than just a sale of materials, but do not condition themselves on a requirement that the builder must install or attach the object to a piece of immovable property. La.C.C. arts. 2756 et seq. Henson v. Gonzalez, 326 So.2d 396 (La.App. 1st Cir.1976). Also see Alonzo v. Chifici, 526 So.2d 237 (La.App. 5th Cir.), writ denied, 527 So.2d 307 (La.1988). Thus, the Board in reviewing the contracts could have determined that the contract was a construction contract and not one of sale. However, it is also apparent that there is substantial evidence in the record to support a determination that the contract in question was one of sale. The supporting documents refer to the parties as "seller" and "purchaser"; at no point is Westinghouse referred to as "contractor." While, as the trial court stated, "[t]he presence or absence of the word contractor is not critical to determining the nature of the contract," *1348 the use of the terminology indicates the understanding of the parties at the time the documents were confected. Moreover, LP & L does not contest the applicability of the sales/use tax to the purchase of the generator. Rather, LP & L is contesting the amount of tax to be assessed. Nor does LP & L contest its ultimate responsibility for the payment of any sales/use tax. LP & L has never claimed that Westinghouse as contractor of an immovable should be responsible for the tax, even though it is well settled jurisprudentially that the contractor is the purchaser and consumer of the building materials used in construction and, as such, owes the tax on the purchases, rather than the owner. Concordia Parish School Board v. Russ, 491 So.2d 1368 (La.App. 3d Cir.), writ denied, 496 So.2d 350 (La.1986).
A review of LP & L's contract with CE shows even less support for LP & L's position. In that contract which contained no reference to the supervisory duties of CE, CE agreed to sell a Nuclear Steam Supply System, with delivery of the components in June 1974.
Thus, we find there is sufficient evidence in the record to support the Board's judgment.
Furthermore, a determination that these two contracts were construction contracts would not have disposed of the issue in the instant case. LP & L seeks to utilize an exemption provided by La.R.S. 47:305.11 which reads as follows:
A. No new or additional sales or use tax shall be applicable to sales of materials or services involved in lump sum or unit price construction contracts entered into and reduced to writing prior to the effective date of the statute or ordinance levying same or to sales or services involved in such contracts entered into and reduced to writing within ninety days thereafter, if such contracts involve contractual obligations undertaken prior to such effective date and were computed and bid on the basis of sales taxes at the rates effective and existing prior to such effective date. [Emphasis added.]
An exemption from taxation is a privilege which must be clearly and unequivocally established. McNamara v. Electrode Corporation, 418 So.2d 652 (La. App. 1st Cir.), writ denied, 420 So.2d 986 (La.1982). It is apparent from reading the exemption provided by La.R.S. 47:305.11 that not all construction contracts are exempt from the extra sales tax, but only those which were computed and bid on the basis of the sales/use tax rate existing on or before the date of the contract. The contracts in question both state that the bid price does not include the two percent sales tax. Therefore, it is clear that the Board could have determined that these were construction contracts which were not computed and bid on existing sales tax rates.
The Legislature, in passing in 1970 an exemption to the increase in sales/use tax (La.R.S. 47:305.11) at the same time it passed the one-cent increase (La.R.S. 47:321), intended to protect those who had incurred obligations on immovable property construction contracts on the basis of existing statutes, as explained in Senate Concurrent Resolution No. 248 adopted on May 20, 1971. The obligations incurred by Westinghouse and CE in July of 1970 did not include any obligation to pay the sales tax from the amount they bid on the project. The sales tax was specifically excluded from the bid price. Thus, the intent of the statute to protect contractors from the payment of additional taxes which they could not collect from the owners because of a set contract price would not be furthered by allowing LP & L to assert the exemption. LP & L did not, on the record before the Board, clearly and unequivocally establish that the privilege of the statutory exemption to the additional sales tax should be applied to the contracts in question between LP & L and Westinghouse and LP & L and CE.

CONCLUSION
For the foregoing reasons, we find that the Board correctly applied the law to the *1349 facts before it, and we affirm the judgment of the trial court in its entirety. All costs of this appeal are to be borne by the appellant, LP & L.
AFFIRMED.