809 So.2d 1023 (2001)
SECRETARY, DEPARTMENT OF REVENUE, State of Louisiana
v.
CALCASIEU REFINING COMPANY.
No. 2000 CA 1735.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
*1024 Otha "Curtis" Nelson, Jr., Baton Rouge, Counsel for Appellant Secretary of the Dept. of Revenue, State of LA.
Robert S. Angelico, Cheryl M. Kornick, New Orleans, Counsel for Appellee Calcasieu Refining Co.
Before: FOIL, PETTIGREW, and KLINE[1], JJ.
WILLIAM F. KLINE, Judge Pro Tem.
This appeal arises following a district court judgment in favor of an out-of-state corporate taxpayer classifying certain credits received from a supplier as interest income rather than discounts on purchase *1025 price. For the reasons which follow, we affirm.

FACTS AND PROCEDURAL HISTORY
The defendant, Calcasieu Refining Company ("Calcasieu"), is a corporation domiciled in Texas, which operates an oil refinery in Lake Charles, Louisiana. As part of its usual business practice, Calcasieu purchases large quantities of crude oil from its suppliers. At the time an order is placed, Calcasieu is required by a supplier either to furnish to the supplier a letter of credit or to make a cash deposit against the purchase price of the oil. The amount of a cash deposit for Calcasieu is an amount equaling the purchase price less Calcasieu's established credit line of one to two million dollars. Generally, in these transactions, payment under the purchase agreement is not owed until sixty days after the order is placed. In order to compensate Calcasieu for interest it would otherwise have earned on its cash, lost while the funds are on deposit with the supplier, the supplier credits Calcasieu with interest on the deposit.[2]
On its 1990, 1991 and 1992 state and federal tax returns, Calcasieu originally classified these credits as reductions on the cost of the purchased goods; however, the state returns were later amended to classify the credits as interest income.[3] The Louisiana Department of Revenue and Taxation ("Department") objected to the reclassification and denied Calcasieu's request for refund of overpayments.
Thereafter, Calcasieu filed a petition with the Board of Tax Appeals ("Board") entitled "Petition for Refund or Credit of Overpayments and Alternatively to Recover Money Erroneously Paid into the Treasury of the State of Louisiana," and which sought to recover over $90,000.00 in alleged overpayments. Following a hearing held on July 7, 1999, the Board issued a judgment finding as a matter of fact and law that the amounts of cash deposits made with suppliers reported by Calcasieu in the calendar years 1990, 1991, and 1992, "as reductions to the cost of goods sold" were properly classified as interest income and thus properly allocated to the State of Texas pursuant to La. R.S. 47:287.92 and 47:287.93(A)(4). The Department was further ordered to refund to Calcasieu overpayments of Louisiana corporation income tax, with interest, in the amounts of: $57,846.00 for 1990, $21,072.00 for 1991, and $27,049.68 for 1992.
The Department filed a petition with the district court for review of the Board's decision, on September 21, 1999. The district court rendered judgment upholding the Board's decision. Thereafter, the Department filed this suspensive appeal, urging the following assignments of error:
(1) LSA-R.S. 47:1412 mandates that the Board of Tax Appeals apply the rules of evidence followed in the district courts of Louisiana; in direct contravention to the rules of evidence, the Board of Tax Appeals erroneously allowed inadmissible hearsay testimony to be offered into evidence concerning the suppliers' viewpoint and perspective as to the classification of the discounts. (B.T.A. Tr. 23-38).
(2) LSA-R.S. 47:1412 mandates that the Board of Tax Appeals apply the rules of *1026 evidence followed in the district courts of Louisiana; in direct contravention to the rules of evidence, the Board of Tax Appeals erroneously allowed inadmissible written hearsay statements made by suppliers to be admitted into evidence. (B.T.A. Tr. 23-38).
(3) Contrary to proper statutory interpretation and applicable case law, the Board of Tax Appeals erred when it determined that the discounts relating to the cash payments made with suppliers were interest income pursuant to LSA-R.S. 47:287.92. Appendix Exhibit A-1.
(4) Contrary to proper statutory interpretation, the Board of Tax Appeals erred when it determined that the discounts relating to the cash payments made with the suppliers were interest income, which should be allocated to the State of Texas pursuant to LSA-R.S. 47:287.93(A)(4). Appendix Exhibit A-1.
(5) Contrary to proper statutory interpretation, the Nineteenth Judicial District Court erred when it determined that the discounts were interest income without any legal authority to support this legal conclusion. Appendix Exhibit A-3.
(6) In direct contravention with Louisiana jurisprudence addressing the meaning of credits as used in the tax statutory provisions, the Nineteenth Judicial District Court erred when it determined that the advanced cash payments were credits as contemplated by LSA-R.S. 47:287.93(A)(4). Appendix Exhibit A-1.

DISCUSSION
At the hearing before the Board, the parties entered into the following stipulations of fact regarding the 1990 to 1992 time period:
1. Calcasieu Refining Company['s] ("Calcasieu") corporate headquarters is located in Houston, Texas.
2. Calcasieu's parent corporation, Transworld Oil USA, Inc. is located in Houston, Texas.
3. Calcasieu's physical refinery is located in Lake Charles, Louisiana.
4. Calcasieu's Louisiana operations involve the manufacturing or refining of crude oil, the Louisiana refinery does not produce crude oil.
5. Calcasieu's 1990 U.S. Corporation Income Tax Return shows a deduction of $508,476 for Louisiana income tax expense.
6. Calcasieu and the Department of Revenue ("Department") admit that on its 1990 Louisiana Corporation Income tax return, Calcasieu incorrectly added back to the Federal Net Income the amount of $688,982 as a Louisiana income tax expense.
7. Calcasieu and the Department admit that the audit adjustment made on the Department's audit report for tax period 1990 in the amount of $694,484 was incorrect and that the $694,484 Louisiana income tax represents Louisiana income taxes properly expensed in 1989.
8. The crude oil purchases at issue in this matter involve the purchase of crude oil for delivery at a future date.
9. The suppliers of crude oil at issue in this case required that Calcasieu either obtain: 1) a letter of credit from a bank, or 2) pay an amount for the delivery of the crude oil in advance of actual shipment.
10. The advancement of the cash to the suppliers does not represent the full amount charged for the crude oil purchased.
11. The price of crude oil sold by the suppliers is determined by a posted price.
12. The suppliers do not issue checks to Calcasieu as representation of interest, *1027 which has accrued on the initial cash payments to the supplier.
Mr. Thomas B. Markley, the financial officer for Calcasieu, testified at the hearing before the Board that their suppliers require security at the time an order for the purchase of oil is placed; this security can be in the form of a cash deposit or a letter of credit. Mr. Markley stated that Calcasieu prefers to utilize cash deposits rather than letters of credit since it receives the same amount of interest on its cash from a supplier as a bank would pay, and the company, in so doing, saves the letter of credit fees, which would amount to some $300,000.00 per year. Mr. Markley testified that the interest Calcasieu receives from a supplier is at the sixty-day commercial paper rate as published in the Wall Street Journal, calculated from the time the money is transferred to the date payment is due on the oil purchase. Mr. Markley further testified that Calcasieu is credited for the amount of interest at the time the deposit is made, thereby reducing the amount of the deposit actually required. Thereafter, when the purchase price becomes due, the amount paid is the purchase price less the amount of funds on deposit. Mr. Markley further stated that the determination of the purchase price of the oil is totally separate from the calculation of interest owed on the deposited funds, and that purchase price is computed based on `the average of posting prices ... [and] the volume of barrels that's actually delivered." Additionally, Mr. Markley related that the cash deposits are advanced from Calcasieu's Houston office, usually to companies based in other states and that the funds are never located in Louisiana.
The district court upheld the ruling of the Board and found the credits were properly classified as interest income, and were thus properly allocated to the State of Texas. The oral reasons for judgment were as follows, in pertinent part:
[T]he parties have agreed that what is at issue is interpretation of some invoices and contracts and what was introduced into evidence at the Board was an example of what both sides agree would be representative invoices and contracts. In this case the invoice and contract was between Calcasieu Refining and Texaco Trading and Transportation, Inc. And the invoice does refer to it as a discount, but that was the invoice prepared by Texaco Trading and Transportation and not by Calcasieu. As Mr. Nelson pointed out, Mr. Markley may like to have it worded differently in the past, heI mean, in the future, he doesn't have any control over how it is worded since its wording that comes out of Texaco and not provided by Calcasieu[.] But the state has presented a very detailed, very coherent and very well presented argument.... With regard to the hearsay, I think you're right. I think a lot of the testimony or some of the testimony and some of the documents that were introduced do constitute hearsay. And for the purposes of my review, I have not considered those documents. I have based my review on other evidence in the record and my appreciation of the law without considering those. So whether that amounts to a de nova [sic] review of the Board's decision or whether it is merely a review of their decision without considering that hearsay, I guess is for y'all [sic] to decide. But that's the way I have looked at it. And as the state points out, interest is the use or forbearance of someone else's money. And frankly the explanation given by Mr. Markley and the notations made on the demonstrative exhibit used by the state where a specific discount rate of 8.2%, which is usual for a purchase discount and the computation *1028 where the 54 days between the date of payment of the initial cash payment and the date of payment pursuant to the invoice just leads me to believe that this is interest that we're talking about. And I find the taxpayer's explanation of this to be very credible, very easily explained and relating this to interest that is earned on that money held by Texaco before Texaco is entitled to it. As I see a purchase discount, or a discount for the purchase of goods which the state contends this would be, that's where I merely pay somebody early for something I've already received. Here Calcasieu is paying well in advance of ever receiving anything and before they are invoiced for what they have received. And again, Texaco has the use of this money for 54 days. Calcasieu is deprived of the use of the money for 54 days. Texaco earns interest on it at 8.2%. Calcasieu is deprived of the right to earn interest on it at 8.2% and all Texaco is doing is saying, that's money we earned at your expense so we are going to take it off of what you owe us. That to me is interest and I believe the Board's decision on that is correct.
Now, with regard to the alternative argument that this should fit under R.S. 47:282.93 Subsection 8(2), as interest on customer's notes and accounts, I found that an interesting argument which at first made me believe that perhaps it should be remanded to the Board of Tax Appeals for consideration. But that statute goes on to provide that it would be interest on customer's notes and accounts shall be allocated by reference to the transaction from which the receivables arose. And I think the use of the term from which the receivables arose, indicates again as Ms. Kornick responded that this is where Calcasieu has made a sale of goods and the purchaser delays in making payment and pays interest on that customer account. And that interest income would then be allocated to the location where the receivable arose. So I think that is the purpose for Subpart 2 of Subsection A. So I do not think a remand for consideration of that would be proper.
So I affirm the decision of the Board of Tax Appeals.
Judicial review of a decision of the Board is rendered upon the record as made before the Board and is limited to facts on the record and questions of law. The Board's findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence on the entire record. St. Pierre's Fabrication and Welding, Inc. v. McNamara, 495 So.2d 1295, 1298 (La.1986); Louisiana Power & Light Co. v. McNamara, 550 So.2d 1345, 1347 (La.App. 1st Cir.1989), writ denied, 559 So.2d 120 (La. 1990); Collector of Revenue v. Murphy Oil Corporation, 351 So.2d 1234, 1236 (La. App. 4th Cir.1977). See also La. R.S. 47:1434. With regard to questions of law, the judgment of the Board should be affirmed if the Board has correctly applied the law and has adhered to the correct procedural standards. Louisiana Power & Light Co. v. McNamara, 550 So.2d at 1347; Collector of Revenue v. Murphy Oil Corporation, 351 So.2d at 1236.

Admission of Hearsay Evidence
Although Mr. Markley testified about how Calcasieu's suppliers classified the interest credits, and documents substantiating that testimony were introduced over the state's hearsay objection, we find the admission of this evidence to be cumulative and any error in its admission harmless.

*1029 Classification of Credits as Interest

Although no guidance is provided in Title 47 as to the definition of interest income, "interest," in the financial sense, is generally defined as "money paid for the use of money."[4] Mr. Markley, in his testimony, defined interest as compensation for the time value of money, and stated the credits his company receives from the suppliers are a reimbursement for the interest his company's money would have earned in the bank. In contrast, the Department urges this court to find the Board erred in failing to classify the credits at issue as reductions to the cost of goods sold.
After a thorough review of the record, we are unable to say the Board erred in its factual determination that the credits at issue were in the nature of interest, rather than a discount on the purchase price of the goods sold. The testimony of Mr. Markley provided a reasonable basis for this conclusion. We find no manifest error in the factual findings of the Board and the application of the law to those findings.

CONCLUSION
For the reasons assigned herein, the judgment in favor of Calcasieu Refining Company is affirmed. All costs in this matter, in the amount of $1,318.21, are to be borne by the Louisiana Department of Revenue and Taxation
AFFIRMED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The amount of interest due on the deposit is calculated prior to the deposit being made and actually deducted from the amount submitted as a deposit.
[3] The federal returns were not amended since it would have made no difference in the amount owed; amending the Louisiana state return would produce an allocation of the interest amount as income in Calcasieu's home state of Texas, where no tax would have been due.
[4] Webster's New World Dictionary (3d Col. Ed.1988).