# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1474

**LOUIS B. VIVIANO, ET AL.**

**VERSUS**

**CYNTHIA BRIDGES, IN HER CAPACITY AS SECRETARY OF THE DEPARTMENT OF REVENUE, STATE OF LOUISIANA**

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 042178
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**Saunders, Judge, concurs in the result and assigns written reasons.**

**REVERSED AND RENDERED.**

**Mark T. Hennen**
**Jones, Walker, Waechter**
**201 St. Charles Ave., #5100**
**New Orleans, LA 70170**
**(504) 582-8228**
**COUNSEL FOR PLAINTIFFS-APPELLEES:**
    Louis B. Viviano and Christy L. Viviano

**Elroy A. James**
**Louisiana Department of Revenue**
**P. O. Box 4064**
**Baton Rouge, LA 70821-4064**
**(225) 219-2080**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    Cynthia Bridges, Secretary of the Department of Revenue

**PICKETT, Judge.**

The Louisiana Board of Tax Appeals (BTA) found that Louis B. Viviano and Christy L. Viviano owed $715,075.00 in income taxes for the years 1990, 1991, and 1992. Cynthia Bridges, Secretary of the Louisiana Department of Revenue, appeals a judgment of the district court that reversed the findings of the BTA.

## STATEMENT OF THE CASE

In December 1994, the Vivianos, who are married, received Notice of Assessments from the Department of Revenue for unpaid individual income taxes for the tax years 1990, 1991, and 1992. The Department alleged that the Vivianos were indebted to the state for the following amounts:

| Year | Tax due | Interest | Penalties | Total due |
|------|---------|----------|-----------|-----------|
| 1990 | $165,558.00 | $91,162.03 | $41,389.50 | $298,109.53 |
| 1991 | $166,650.00 | $66,723.32 | $41,662.50 | $275,035.82 |
| 1992 | $79,692.00 | $19,973.62 | $23,907.60 | $123,573.22 |
| Total | $411,900.00 | $177,858.97 | $106,959.60 | $696,718.57 |

Rather than pay the assessed taxes, the Vivianos timely filed an appeal with the BTA pursuant to La.R.S. 47:1565. In their Petition for Redetermination of Assessments, the Vivianos alleged that they were residents of and domiciled in Florida during the relevant tax years, and therefore not liable for Louisiana state income taxes. This action was consolidated by the BTA with the Vivianos' appeal of the assessment for 1989 income taxes. After discovery and numerous continuances, the BTA heard the Vivianos' appeal on December 3, 2002, February 5, 2003, and April 1, 2003.

At the conclusion of the hearing, the BTA determined that the Vivianos were Louisiana residents for the purposes of the income tax statutes and that they were domiciled in Louisiana. The BTA determined that the assessment for 1989 was untimely. The BTA did reduce the income taxes due for 1990, 1991, and 1992 based on the Vivianos' settlement of certain issues with the Internal Revenue Service which required them to repay certain amounts. The BTA also waived all penalties assessed

by the Department of Revenue. The BTA found that for the three years, the Vivianos were liable to the state for $258,899.00 plus accrued interest through December 15, 2003 of $456,592.00, less a credit of $416.00 paid in 1990, for a total amount due of $715,075.00.

The Vivianos appealed the BTA's determination that they were residents of Louisiana and owed state income taxes for 1990, 1991, and 1992 to the district court pursuant to La.R.S. 47:1434. Alternatively, they asked the district court to reduce the amount of interest owed. The Secretary did not appeal the dismissal of the 1989 assessment, the reduction of the taxes due, or the abatement of penalties, and those issues are final. Following extensive briefing and a hearing on July 15, 2011, the district court reversed the BTA and found the Vivianos were residents of Florida in 1990, 1991, and 1992, and that they did not owe Louisiana state income taxes for those years. The Secretary, on behalf of the Department of Revenue, now appeals that judgment.

## ASSIGNMENTS OF ERROR

On appeal, the Secretary argues that the district court erred in reversing the decision of the BTA absent a finding that the decision was not in accordance with the law and in interpreting a tax statute in a manner that would lead to absurd consequences.

## DISCUSSION

The supreme court enunciated the standard of review in appeals from decisions of the BTA in *International Paper, Inc. v. Bridges*, 07-1151, pp. 9-10 (La. 1/16/08), 972 So.2d 1121, 1127-28 (footnotes omitted):

> With regard to the appropriate standard of review for those decisions issued by the Board, LA.REV.STAT. § 47:1435 is instructive, as that statute provides that reviewing courts may reverse or modify decisions of the Board if those decisions are not in accordance with law. Further, this Court in *St. Pierre's Fabrication and Welding, Inc. v. McNamara*, 495 So.2d 1295 (La.1986) stated:

2

> The standard of review of a decision of the Board of Tax Appeals is correctly enunciated in *Collector of Revenue v. Murphy Oil Co.*, 351 So.2d 1234 (La.App. 4th Cir.1977). Judicial review of a decision of the Board is rendered upon the record as made up before the Board and is limited to facts on the record and questions of law. ***The Board's findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence on the entire record.***

> As the *Murphy Oil Co.* court annunciated:

> In this type of case, the Board acts as a trial court, its findings of fact should be accepted where there is substantial evidence in the record to support them, and should not be set aside unless they are manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. ***If the Board has correctly applied the law and adhered to correct procedural standards, its judgment should be affirmed.***

Thus, the district court is tasked with insuring that the BTA followed all procedural rules and followed the law. The district court may only reverse the factual findings of the BTA if those findings are manifestly erroneous. We apply the same standard of review in the court of appeal. Thus, we must determine if the BTA (1) followed the procedure outlined in Title 47, (2) correctly followed the applicable law in reaching its determination, and (3) had "substantial evidence in the record" to support its factual findings. *Id. See also Am. Moving and Storage of Leesville, Inc. v. Bridges*, 10-825 (La.App. 3 Cir. 12/8/10), 53 So.3d 581, *writ denied*, 11-47 (La. 3/4/11), 58 So.3d 476. We are not required to afford deference to the opposite conclusions of the district court acting as a court of judicial review pursuant to La.R.S. 14:1435.

We begin our review of this case with the applicable law. Louisiana Revised Statutes 47:31(1) defines who is liable for individual income taxes:

> **Resident individuals.** Every person residing within the state, or the personal representative in the event of death, shall pay a tax on net income from whatever source derived, except as hereinafter exempted.

> Every natural person domiciled in the state, and every other natural person who maintains a permanent place of abode within the state or who spends in the aggregate more than six months of the taxable year within the state, shall be deemed to be a resident of this state for the purpose of determining liability for income taxes under this Chapter.

In this case, the BTA, in its reasons for judgment, stated:

> After a review of all the documents introduced and the testimony adduced at trial, it is obvious to the Board that both of the Vivianos are not domiciled in nor did they reside in Florida and were domiciled and resided in Louisiana. They are therefore "Resident Individuals" as contemplated by LAS-R.S. 47:31(1).

The Vivianos claim that they purchased and moved into a condominium in Florida in 1989, and remained there throughout the years in dispute in this appeal. To support their contention, they introduced evidence that they registered to vote in Florida and actually voted, had a home with a homestead exemption in Florida and paid property taxes on that home, paid intangible property taxes in Florida, and received mail in Florida.

To support its assessment of taxes on the Vivianos as residents of Louisiana, the Department of Revenue introduced evidence that the Vivianos maintained their much larger home in Opelousas and the homestead exemption thereon. Their young son was enrolled in school in Opelousas beginning in the fall of 1990 and throughout the remainder of the 1991 and 1992. Mr. Viviano's flight logs from the planes that he leased showed that the plane was in Louisiana far more often that it was in Florida. The vast bulk of the Vivianos' mail was received in Opelousas, including mail from Florida. Mr. Viviano maintained his law office in Louisiana and operated several Louisiana corporations which the Vivianos owned. He served as agent for service of process for many of these companies, and he signed annual reports listing his address as Opelousas. The Vivianos' credit card statements and telephone bills also showed that the Vivianos were in Louisiana far more often than they were in Florida. The BTA discredited the testimony of Mr. Viviano that the family moved to Florida in

1989 to operate his blood plasma business and because his best friend had moved there.

The district court, after reviewing the evidence presented to the BTA, determined that the BTA committed manifest error. It found that the evidence supported the Vivianos' claim that in 1989 they purchased a home in Destin, Florida, and established their domicile there. The district court also found that the Vivianos did not maintain a permanent place of abode in Louisiana. Finally, the district court found that the Department of Revenue did not prove that the Vivianos spent "in the aggregate more than six months of the taxable year" in Louisiana.

Our review of the record convinces us that the BTA followed the applicable law and that its findings of fact, that Vivianos were domiciled in and were residents of Louisiana, were supported by the evidence. The district court, therefore, erred in reversing the BTA's judgment. The Department of Revenue correctly assessed the Vivianos with individual income taxes in 1990, 1991, and 1992, and interest thereon, in the amount of $715,075.00.

## CONCLUSION

The judgment of the district court is reversed and the judgment of the Board of Tax Appeals is reinstated. Costs of this appeal are assessed to Louis B. and Christy L. Viviano.

**REVERSED AND RENDERED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-1474

LOUIS V. VIVIANO, ET AL.

VERSUS

CYNTHIA BRIDGES, SECRETARY, DEPARTMENT OF REVENUE,
STATE OF LOUISIANA

**SAUNDERS, Judge, concurs and assigns written reasons.**

I concur with the result of the majority opinion. However, I do not agree
with the majority opinion wherein it finds that "the [BTA's] findings of fact, that
[the] Vivianos were domiciled in and were residents of Louisiana, were supported
by the evidence."

Louisiana Revised Statutes 47:31(1) states:

There shall be levied, collected, and paid for each taxable year a
tax upon the net income of residents and nonresidents, estates, trusts
and corporations, as hereinafter provided.

(1) **Resident individuals.** Every person residing within
the state, or the personal representative in the event of
death, shall pay a tax on net income from whatever
source derived, except as hereinafter exempted.

Every natural person domiciled in the state, and every
other natural person who maintains a permanent place of
abode within the state or who spends in the aggregate
more than six months of the taxable year within the state,
shall be deemed to be a resident of this state for the
purpose of determining liability for income taxes under
this Chapter.

The trial court, in its reasons for judgment, correctly points out that there are
three classes of persons that are deemed a resident of Louisiana so as to be
subjected to a tax on the income from whatever source derived. They are:

1.   Any natural person that is domiciled in the State of Louisiana, or

2.   Any natural person who maintains a permanent place of abode within the State of Louisiana, or

3.   Any natural person who spends in the aggregate more than six months of the taxable year within the State of Louisiana.

Further, the trial court correctly interpreted the statute in stating, "it is not necessary for a natural person to meet all of the previously mentioned classes, but rather, as long as a natural person falls into one of the three classes listed above[,] said person shall be considered to be a resident individual of the State of Louisiana." As the trial court once again correctly points out, if one does fall into one of the three categories, he or she "shall be subjected to [Louisiana's] tax laws."

The majority opines that the BTA's finding of fact that the Vivianos were domiciled in the State of Louisiana was supported by the evidence in the record. I disagree.

Louisiana Civil Code Article 38 states, "[t]he domicile of a natural person is the place of his habitual residence." Louisiana Civil Code Article 39 (emphasis added) states, "[a] natural person may reside in several places but may not have more than one domicile. In the absence of habitual residence, any place of residence may be considered one's domicile *at the option of persons whose interests are affected*." Our Louisiana Supreme Court, in *Russell v. Goldsby*, 00-2595, p. 5 (La. 9/22/00), 780 So.2d 1048, 1051, stated the following:

> it is well settled that residence and domicile are not synonymous, and a person can have several residences, but only one domicile. La. Civ.Code art. 38; *Messer* [*v. London*, 438 So.2d 546 (La.1983)]; *Autin v. Terrebonne*, 612 So.2d 107 (La.App. 1st Cir.1992). A person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain. The question of domicile is one of intention as well as fact, and where it appears domicile has been acquired in another place, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed by

2

positive and satisfactory proof of establishment of a domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. *Pattan v. Fields*, 95-1936 (La.App. 1st Cir.1995), 669 So.2d 1233. Absent declaration to change domicile, proof of this intention depends upon circumstances; there is a presumption against change of domicile. *Messer*, 438 So.2d at 547; *Herpin v. Boudreaux*, 98-306 (La.App. 3d Cir.3/5/98), 709 So.2d 269, *writ denied*, 98-0578 (La.3/11/98), 712 So.2d 859.

I feel that the evidence in the record is such that the Vivianos overcame the legal presumption that they did not intend to change their domicile from Louisiana. I feel that the trial court's reasons for judgment on this issue are correct. There, he analyzes this issue quite thoroughly in stating:

> The facts and record establish that the [Vivianos'] domicile [] changed when they acquired a residence in Florida along with the intent to remain there indefinitely. The [Vivianos'] acquired a residence, consisting of physical presence, in Florida when they purchased a condominium at Sandestin Resort in Destin. The final analysis is whether [the Vivianos] had the intent to remain in Florida. This court recognizes that purchasing a home and supplying it with the common utilities that homes have, such as electricity and water, it not in and of itself enough to prove intent to remain in any particular state. However, this evidence[,] in combination with the fact that the couple registered to vote in Florida, discontinued to voting in Louisiana, opened a post office box and a checking account in Florida, paid Florida property taxes, started a new business in Florida, and filed Florida intangible personal property tax returns required of Florida residents during the taxable periods at issue[,] is sufficient to prove that the [Vivianos] did establish intent to remain in Florida and to make Florida their domicile.

To me, the question of whether the Vivianos are natural people who maintain a permanent place of abode within the State of Louisiana, the second classification, is less clear. However, I would note that the trial court gave due consideration to the issue, and I would agree with his result. His analysis follows:

> [The Vivianos] argue that they did not have the intent to remain in Louisiana even though they kept a house located in Opelousas, Louisiana. This is evidenced by two facts. First, upon moving to Florida, [their] oldest son, Charlie, a major, lived in the house while he was employed by [them]. Next, Mr. Viviano's mother's health was deteriorating; therefore, they made the decision to keep the house. They enrolled their son in school in Louisiana due to the proximity to Mr. Viviano's mother due to her failing health and state of depression.

3

Mrs. Viviano did spend time in Louisiana; however, [the Vivianos'] arguments[,] as discussed in proving their domicile had changed from Louisiana to Florida[,] are also relevant in the determination whether [] Louisiana constituted [their] permanent place of abode during the applicable tax periods.

. . . .

Although Louisiana bears no statute explaining or defining the phrase "permanent place of abode," the Louisiana Supreme Court has held that "[r]esidence and place of abode are synonymous." *Taylor v. State Farm Mut. Auto Ins. Co.*, (La.1965). Additionally, Black's Law Dictionary defines "permanent abode" as "the place at which a person is physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."

This court acknowledges that [the Vivianos,] in this case, did in fact have a physical residence in the state of Louisiana in that they owned a house in Opelousas, Louisiana. However, it is this court's opinion that the term "permanent place of abode," a term of art, implies something more than merely owning a house and living in the state on a temporary basis. Read literally, the term implies that there must be some permanence attached to the residence. Nothing in the record suggests a high enough degree of permanence to the residence in Louisiana in order to reach the conclusion that Louisiana is [the Vivianos] permanent place of abode. According to the testimony of [the Vivianos], Mrs. Viviano and her son were in Louisiana due to the illness of Mr. Viviano's mother and because Mrs. Viviano had to be close to her mother-in-law, they decided to enroll their child in a Louisiana school. Based upon the record, it is clear that Mrs. Viviano did not intend to permanently reside in Louisiana.

This court, in determining whether Louisiana was [the Vivianos] permanent place of abode during the Taxable Years, also takes into consideration the purpose for which [the Vivianos] moved to Florida. According to the record, Mr. Viviano was in the business of plasma foresis, a process used to obtain plasma from various donors. One of Mr. Viviano's companies, Louisiana Biologicals[,] obtained a contract with the State of Louisiana Department of Corrections in 1981 to operate a plasma foresis program in each of the five prison facilities and then later obtained separate contracts for each of the facilities. Mr. Viviano testified that a negative perception grew towards plasma obtained from prison inmates when AIDS and questions of the reasons behind its transmission arose to the forefront of concern. It is Mr. Viviano's testimony that he learned people became concerned that plasma coming from Louisiana was prison plasma. In his attempt to divert the attention from Louisiana, [the Vivianos] decided to move to Florida and establish another company, CBC International. CBC International bought the plasma from the

Louisiana companies as well as other companies around the world and then proceeded to resell the plasma. According to Mr. Viviano's testimony, moving to Florida was not only for business reasons, but Florida was chosen among all other states due to personal reasons. Mr. Viviano's best friend also lived in Florida which contributed heavily to their decision.

Taking into consideration the fact presented above as well as the purpose and reasons for moving to Florida set forth by [the Vivianos], this court concludes that Louisiana was not [the Vivianos'] permanent place of abode.

I would note that another of the personal reasons of Mr. Viviano is likely that Florida currently has no personal income tax and has a corporate income tax of five (5%) percent. However, this fact would also seemingly weigh in favor of finding that the Vivianos intended to change their domicile as well as their permanent place of abode to Florida.

Where I disagree with the trial court, which ultimately results in my concurrence with the result reached by the majority, is in regards to the third classification. I agree with the majority that the BTA was not manifestly erroneous in finding that the Vivianos were natural persons who spent in the aggregate more than six months of taxable year within the State of Louisiana.

The trial court, in his analysis, on the third classification, correctly points out that whether hours, days, or months are to be considered in making a determination on this issue is vague. However, the trial court focused nearly entirely on the time spent in Louisiana by Mr. Viviano.

To me, it is clear from the record that Mrs. Viviano spent at least (75%) of her time in Louisiana given that her son was in school here for nine (9) months in a given year and she was here to tend to the needs of her sick mother-in-law who was apparently sick for the entire twelve (12) months the taxable years at issue. I agree with the trial court that a finding that Mr. Viviano spent more than six (6) months of those taxable years in Louisiana was a very close issue. However, I feel

the trial court should have considered the combination of Mr. and Mrs. Viviano's time here. My reading of the record suggests that the combination clearly exceeds fifty (50%) percent of their time in the taxable years.

Accordingly, as I cited earlier from the trial court's reasons for judgment, "it is not necessary for a natural person to meet all of the previously mentioned classes, but rather, as long as a natural person falls into one of the three classes listed above[,] said person shall be considered to be a resident individual of the State of Louisiana." As such, I feel that the BTA was reasonable in finding that the Vivianos spent "in the aggregate more than six months of the taxable year within the State of Louisiana." Therefore, I agree with the result reached by the majority to reverse the trial court's judgment.