STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-1111

TOPSHELF SPORTS, INC.

VERSUS

ROBERT SIMPSON, DIRECTOR,
LAFAYETTE PARISH SCHOOL SYSTEM

**********

APPEAL FROM THE
LOUISIANA BOARD OF TAX APPEALS, LOCAL TAX DIVISION
NUMBER L00034
CADE R. COLE, LOCAL TAX JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.

AFFIRMED.

Nicole F. Gould Frey
David R. Kelly
David R. Cassidy
Breazeale, Sachse & Wilson, LLP
P. O. Box 3197
Baton Rouge, LA 70821
(225) 387-4000
COUNSEL FOR PLAINTIFF/APPELLANT:
    Topshelf Sports, Inc.

**Robert R. Rainer**
**Robert Frederick Mulhearn, Jr.**
**Drew M. Talbot**
**Ranier Anding Talbot & Mulhearn**
**8480 Bluebonnet Boulevard, Suite D**
**Baton Rouge, LA 70810**
**(225) 766-0200**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Lafayette Parish School System**
    **Robert Simpson, Director**

**GREMILLION, Judge.**

Topshelf Sports, Inc. (Topshelf) appeals the Louisiana Board of Tax Appeal's (BTA) assessment of $42,944.19 against it, representing unpaid sales taxes, penalties, and interest. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Topshelf owns a nearly 32,000-square-foot metal building in Youngsville, Louisiana. The building is used by individuals and groups for athletic events, exhibitions, conventions, birthday parties, trade events, and similar activities. It is equipped with a skating rink, concession stand, basketball goals, bleachers, hockey boards, scoreboards, locker rooms, bathrooms, volleyball poles and nets, an arcade, and other specialized equipment. Topshelf did not collect any sales taxes from its customers during the audit period claiming that the arrangements it had with its customers were non-taxable rental income from an immovable.

In September 2014, the Lafayette Parish School System Sales Tax Division (LPSS) sent a notice of assessment to Topshelf in the amount of $40,823.71 for unpaid sales taxes during the audit period from January 1, 2011, through December 31, 2013.[1] In October 2014, Topshelf filed a petition to appeal the tax assessment. In February 2015, LPSS filed a motion for partial summary judgment. Topshelf filed a cross-motion for summary judgment. Following March 2015 hearings, both motions for summary judgment were denied. A trial on the merits was held in May 2015. The BTA found that Topshelf's

> [b]uilding is a facility for amusement, entertainment, athletic and/or recreation as contemplated by R.S. 47:301(14)(b)(i), and finds that the activities of the Taxpayer under consideration are in fact the furnishing for a consideration of the privilege of having access to and

---

[1] The parties stipulated that a 4.5% parish sales and use tax existed pursuant to local tax ordinances during the audit period.

the use of a facility for amusement, entertainment, athletic and/or recreation as provided for under R.S. 47:301(14)(b)(i).

The use of the building and its contents is a taxable event under the law, and is not a non-taxable lease of an immovable.

In essence, Topshelf argued that it provided leases of immovable property which were not subject to sales tax, or alternatively, sales for resale that are excluded from tax. The BTA disagreed and found that Topshelf was operating an entertainment, athletic, or recreational facility within the meaning of La.R.S. 47:301(14)(b)(i) and was subject to tax. It rendered a judgment in favor of LPSS on July 23, 2015.

Topshelf's sole assignment of error is that the BTA erred in finding that it was providing a taxable service.

## LOUISIANA REVISED STATUTES 47:301(14)(b)(i)

The standard of review of a decision of the Board of Tax Appeals is correctly enunciated in *Collector of Revenue v. Murphy Oil Co.,* 351 So.2d 1234 (La.App. 4th Cir.1977). Judicial review of a decision of the Board is rendered upon the record as made up before the Board and is limited to facts on the record and questions of law. The Board's findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence on the entire record.

*St. Pierre's Fabrication and Welding, Inc. v. McNamara*, 495 So.2d 1295, 1298 (La.1986). Louisiana Revised Statutes 47:301(14)(b)(i) provides [2] (emphasis added):

(14) "Sales of services" means and includes the following:

. . . .

(b)(i) The sale of admissions to places of amusement, to athletic entertainment other than that of schools, colleges, and universities, and recreational events, and the *furnishing, for dues, fees, or other consideration* of the privilege of access to clubs *or the privilege of*

---

[2] The Lafayette ordinance is identical to the Statute.

*having access to or the use of amusement, entertainment, athletic, or recreational facilities*; but the term "sales of services" shall not include membership fees or dues of nonprofit, civic organizations, including by way of illustration and not of limitation the Young Men's Christian Association, the Catholic Youth Organization, and the Young Women's Christian Association.

In *Cleco Evangeline, LLC v. Louisiana Tax Comm'n*, 01-2162, p. 5 (La. 4/3/02), 813 So.2d 351, 354, the supreme court stated:

> It is a well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. *See United States v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA–C.C. art. 9. This principle applies to tax statutes. *Tarver v. E.I. Du Pont De Nemours and Company,* 93–1005, p. 3 (La.3/24/94), 634 So.2d 356, 358.

Taxing statutes are strictly construed against the taxing authority; if the statute is susceptible to more than one reasonable interpretation, we must interpret it in favor of the taxpayer. *Goudchaux/Maison Blanche, Inc. v. Broussard,* 590 So.2d 1159 (La.1991). In this case, there is no legal dispute regarding the meaning of the statute, only whether the factual circumstances presented are subject to the tax ordinance.[3]

The tax collector found that Topshelf was subject to the tax because it was a facility that provided its customers with access to athletic and recreational entertainment. Topshelf never relinquished possession of the building, as would occur in a lease. Topshelf employees were present at all events, and, at their discretion, sold food and beverages. Topshelf employees opened and closed the

---

[3] Topshelf makes brief mention that the trial court misconstrued the terms "dues, fees or other consideration" as categorically including "rent." However, this argument rests on the factual determination of the nature of Topshelf's transactions with its customers, rather than the legal meaning of "dues, fees or other consideration."

building and set up for events and activities. Topshelf cleaned up after the activities concluded. Many of the events held at Topshelf were very limited in nature and duration, such as two-hour birthday parties. Over one hundred photographs of the Topshelf facility were admitted into evidence. The photos clearly depict a large arena meant for engaging in a variety of sports activities.

James Greco, the owner of Topshelf, testified that he originally built the building when roller hockey was popular in the late 1990s with the intent of allowing leagues to lease the building to host their events. Greco discussed some of his customers' uses for the building including Biddy basketball and hockey leagues, CrossFit training, and birthday parties. He described other events such as ACT prep classes, church services, car shows, and overnight lock-ins.

Greco said that Topshelf management is responsible for maintaining the building in safe operating condition. Topshelf operates the concession stand, for which it collects sales tax. For all of the various events held in the building, Greco testified that Topshelf does not assist in any way with the set-up. Topshelf only ensures that the building is prepared and clean before the parties arrive. Greco said that it is solely up to the parties using the building to determine who is allowed to enter.

On cross-examination, Greco admitted that none of the users of the facilities were given a key; Topshelf employees opened and closed the building. He admitted that neither the ACT prep course nor the church services occurred during the audit period. Further, Greco reviewed some photographs in which he identified athletic balls owned by the various organizations that are stored at Topshelf in a locked storage space. Greco said that his customers are not charged for storage. Greco was asked:

4

Q: So during the audit period was Topshelf outfitted, was it a building outfitted to be an entertainment, athletic, recreational place of amusement?

A: It was outfitted so that people that lease the building could play those sports, yes.

Greco said that in any given day, there could be multiple people using the space for different events; however, none would be there at the same time.

We find no manifest error in the BTA's finding that taxable events occurred at the Topshelf facility. While it is true that the parties purchasing times periods had control over who did or did not enter the building, that factor alone does not transform the nature of the relationship. Greco's own testimony confirms that his customers paid for the privilege of having access to the facility and the athletic entertainment it provided. Topshelf argues that its customers were "paying rent so that they could have control over the facility." We do not agree. It is a mischaracterization to call the fees paid "rent." Topshelf retained ultimate control over the facility. The fact that Topshelf's patrons were given the privilege of access to the facility in return for a fee cannot be transformed by designating it as a "lease" in which its patrons paid "rent."

Simply, this is not the kind of a lease envisioned by the legislature as being tax-free. That lease envisions a party having sole continuous control over a building with the legal rights that would go along with it, such as in an apartment rental. The BTA did not err in finding that the use of the Topshelf building and its contents during the audit period was not a non-taxable lease of an immovable. Accordingly, the LPSS rightfully taxed the transactions pursuant to La.R.S. 47:301(14)(b)(i).

5

## CONCLUSION

The judgment of the BTA assessing Topshelf Sports, Inc. $42,944.19 representing unpaid sales taxes, penalties, and interest is affirmed.  All costs of this appeal are assessed against Topshelf Sports, Inc.

**AFFIRMED**.