BROWN, Chief Judge,
dissents.
11What has been abandoned by the majority is the charge imposed by the supreme court in Landiak v. Richmond, 05-0758 (La.03/24/05), 899 So.2d 535, 541, that:
Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. It follows that, when a particular domicile is required for candidacy, the burden of showing lack of domicile rests on the party objecting to the candidacy. Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections “so as to promote rather than defeat candidacy.” Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. Citations omitted.
In prior election challenges on residency, the issue has been whether the challenged candidate physically resided in a particular place. See Russell v. Goldsby, 00-2595 (La.09/22/00), 780 So.2d 1048, 1052:
We next look to the question of whether plaintiff proved Dr. Goldsby had not “actually resided” at the Division Street address for the year immediately preceding his qualification as a candidate for mayor. While this court has not previously interpreted the phrase “actually resided,” as used in La. R.S. 33:384, we have considered the phrase “actually domiciled,” as used in La. Const, art. Ill, § 4(A) in connection with the qualifications of candidates for the legislature. We concluded that the phrase “actually domiciled” required that the person seeking to hold legislative office must have a “real rather than fictitious domicile in the area represented.” Messer, 438 So.2d at 547; see also Herpin [v. Boudreaux], 98-306 at pp. 2-3 [ (La.App. 3 Cir. 3/5/98)], 709 So.2d [269] at 270-71 (citing Bradley v. Theus, 28,714 (La.App.2d Cir.02/20/96), 668 So.2d 1304, writ denied, 96-0469 (La.02/26/96), 668 So.2d 355). Because La. R.S. 33:384 uses the word “actually” in a virtually identical context (though referring to residence rather than domicile), the inquiry before us is whether plaintiff established that Dr. Goldsby’s Division Street residence is a fictitious residence rather than a real residence. |2The record establishes that Dr. Golds-by eats, naps, and entertains at the DM *277 sion Street address. Moreover, Dr. Goldsby sleeps overnight at the Division Street house on occasion. He keeps changes of clothing and toiletry items at the Division Street house, claims a homestead exemption on this property, receives mail at the Division Street address, and uses this address on his driver’s license. All these factors show Dr. Goldsby has significant connections to the Division Street address, and that his residency at this address is real rather than fictitious.
In the case sub judice, the trial court stated in its written reasons for judgment: “This court now indicates and confirms absolutely this Court’s confidence in the credibility of the Defendant’s witnesses and truthfulness of their testimony.” (Bold emphasis by the trial court).
Everyone, including plaintiff and the trial and appellate judges, agree that Dr. Hicks physically moved to the Holcomb Drive address at the end of August 2010 and that he never went back to the Willow Point address. Everyone also agreed that in July, as well as in August, Dr. Hicks’ intent was to permanently move back to Holcomb Drive. He and his wife had lived at Holcomb Drive from 1997 until they purchased the Willow Point residence in 2002. The majority opinion is confusing. White it recognizes that Dr. Hicks actually occupied, resided, and lived at Holcomb Drive in August, it nonetheless concludes that somehow he was just in the process of moving, a “process” that he did not complete until November.
The burden of proving disqualification lies with the opponent of candidacy.
After hearing the witnesses testify, the district court specifically found that Dr. Hicks and his supporting witnesses were credible. In light of their testimony and documentary evidence, there was ample support to laprove both that Dr. Hicks actually lived at Holcomb Drive prior to September 6, 2010, and that Dr. Hicks intended to make that address his domicile. In fact, he gave the Willow Point residence to his son.
Dr. Hicks’ physical residence at the Holcomb house after August 29, 2010, is unchallenged by the plaintiff and accepted as truth by both the trial and appellate courts. He explained that he moved to that location to be closer to the hospital where his wife was being treated and because it was a better fit for his autistic son than the Willow Point location, where his son would be confused by the absence of his mother.
Dr. Hicks supplied sufficient evidence to overcome any prima facie case, if one was made, that he did not intend to make the Holcomb Drive home his domicile. Despite its specific and emphasized finding that the defendant was a credible witness, the trial court opted to disregard his testimony in favor of the various items of documentary evidence offered by plaintiffs. That documentary evidence, including utility bills, homestead exemption, drivers’ license and voter registration, was explained by Dr. Hicks as a consequence of the tragic illness and death of his wife during the time period in question. As he explained, these items were not a “big deal” when his wife was in intensive care. Likewise, Dr. Hicks explained that the “smoking gun,” the November 2010 move date that he listed on his voter registration card, was a product of his belief that his daughter’s abandonment of the home as her domicile meant that his move was complete at that time.
I/The trial court’s ruling was not plausible. Today’s majority opinion has attempted to make the incredible plausible.